HARVEY G. SERBIN

*v.*

GLEN A. NEWMAN *and* FARM DAIRY CO-OP, INC.

(No. 13034)

Submitted May 8, 1973.          Decided July 31, 1973.

*Schrader, Miller, Stamp & Recht, Thomas B. Miller* for appellant.

*Beneke, Callahan & John, Louis J. John, Pinsky, Mahan, Barnes, Watson, Cuomo & Hinerman, William E. Watson* for appellees.

PER CURIAM:

This appeal comes from the Circuit Court of Brooke County, and raises the sole issue of whether that court

committed reversible error in excluding from consideration of the jury plaintiff's medical evidence tendered for the purpose of showing a causal relation between an automobile accident and a subsequent renal colic attack which necessitated surgical removal of a pre-existing kidney stone.

This case was originally decided by this Court on December 19, 1972 and upon a petition of the appellant, plaintiffs below, a rehearing was granted on March 23, 1973. This opinion has been prepared and is rendered upon further briefs and argument filed and made pursuant to the petition for a rehearing.

Plaintiff, a resident of Monroeville, Pennsylvania, was a salesman for Steel City Builders, a home improvement concern. On Monday, February 13, 1967, while stopped at the intersection of State Routes 2 and 67 in Brooke County, the car being operated by plaintiff was struck from the rear by a truck owned by defendant, Farm Dairy Co-op, Inc., and driven by its employee, the defendant, Glen A. Newman. The car driven by plaintiff was moved about 15 feet by the force of the impact, plaintiff was jostled about, and extensive damage was caused to the rear of the car. The defendant, Glen Newman, admitted fault in the causing of the accident.

Plaintiff experienced no great discomfort or pain immediately upon the happening of the accident, but thereafter proceeded on his way toward Wheeling. Within about an hour upon his arrival there, while attending a meeting, he felt pain at the middle of his back waistline. After his meeting, he proceeded to his home near Pittsburgh, in the meantime having experienced increased pain for which he took aspirin and used a heating pad on arrival at his home. On Tuesday he did not go to work, but called Dr. Donald P. Zangwill for an appointment since the pain was increasing and had moved over into his left side, and down his leg, which pain was reminiscent of that which he had suffered in 1964, at which time physical examination disclosed a

kidney stone. An operation was not performed for the stone's removal at that time, but he was advised to be observant of its giving rise to further trouble. Plaintiff stated that he had not had similar pain from 1964 until following the date of the accident.

On Thursday, February 16, plaintiff was carefully examined by Dr. Donald P. Zangwill, but he did not disclose at that time the results of his examination, telling plaintiff to return on Moday or Tuesday for further consultation. On Sunday the plaintiff's pain had become so severe that he was taken to Montefiore Hospital in Pittsburgh where the kidney stone was surgically removed two days later. He was there confined for two weeks and convalesced at home for three weeks thereafter.

Plaintiff presented the deposition of Dr. Donald P. Zangwill, as a witness on his behalf. Dr. Zangwill was a graduate of Harvard Medical School and had had two years of fellowship training in the field of infectious diseases, especially renal infectious disease; was then an internist in the speciality of internal medicine, and was on the staff of Montefiore Hospital in Pittsburgh, as well as three other Pittsburgh hospitals. He had examined plaintiff on February 16, three days after his accident, and related that plaintiff had told him of the kidney stone attack in 1964, and that x-rays taken January, 1967, disclosed it to be "in the same place it had been three years prior." He found plaintiff suffering muscle spasms and tenderness in his back which in his opinion was directly related to the accident. In response to a hypothetical question which, however, omitted any fact with reference to the reading of x-rays taken before and following the accident with relation to the location of the kidney stone, directed by plaintiff to Dr. Zangwill, he stated that in his opinion the automobile accident "was a *possible* factor involved *in so dislodging* the stone from its previous position" as to have caused the acute renal attack; that the close proximity in time between

the accident and the attack was a factor in forming his opinion. (Emphasis added.) On cross-examination Dr. Zangwill stated that if the stone were not dislodged, he could not associate the renal attack with the accident and that he did not see the x-rays made subsequent to the accident. He further stated that he was wary of a conclusion that the stone was too large to be dislodged because if this were the case "I would suspect it would give him more difficulty all the time." Further, on cross-examination, Dr. Zangwill was questioned as to whether he would relate the accident to the renal attack if the before and after x-rays showed no change in the position of the stone, to which question he replied: "There is several strong assumptions: 1, that it is in the exact same position and 2, that it is too large to be dislodged." When further questioned as to his opinion in view of a statement by the doctor who read the x-ray stating that it was too large to be dislodged, he replied: "That is his opinion. But when you say too large, you have to deal with sizes. We are not talking about grapefruit in the ureter. This is small. It is three to five, perhaps, millimeters, perhaps a little bigger, but apparently after three years it is well stuck in some way at a junction. It is at the lower part of the ureter and the ureter has grown to live with this. But if it is moved a fraction of a millimeter, with peristalsis and urine flow, it could set up a procedure where colic would take part. These are assumptions we have to make, but I believe it is possible."

Defendant presented as a witness Dr. Norman Minde, a staff doctor of the Montefiore Hospital, who was a specialist in industrial medicine and rehabilitation. He testified that he had examined plaintiff in May, 1969, that he had given the history of an existing kidney stone; that he examined the hospital records made on February 19, 1967, the date of plaintiff's admission to the hospital, which showed plaintiff's history of a kidney stone attack in 1964; that an x-ray report made February 21, 1967, indicated that no change in the location of the stone appeared since former x-rays of December 24, 1965, and

January 25, 1967. He further stated he saw no relation between the plaintiff's pain and the automobile accident.

Defendant also presented as a witness Dr. John W. Traubert, who maintained a family practice in Wellsburg. He stated that in his opinion, if the kidney stone were not dislodged by the accident there would be no connection between the accident and plaintiff's subsequent surgery.

The lower court in its charge to the jury excluded evidence pertaining to any medical expenses, loss of wages or damages for pain and suffering in connection with the renal colic attack and the operation to relieve that condition.

The undisputed evidence shows that reports of x-rays taken prior to the auto accident in 1964, on January 25, 1967, and on February 21, 1967, following the February 13, 1967, accident show that the stone had not moved from the position shown on the 1964 x-ray.

The hypothetical question asked by plaintiff of Dr. Zangwill did not include the fact that these x-rays after the accident showed the stone had not moved from its position prior to the accident. On cross-examination Dr. Zangwill said that if it were assumed that the stone were not dislodged from its prior position then he could not directly associate the accident with the subsequent operation, but later stated on re-direct examination that the accident was a possible contributory factor to the renal colic and plaintiff's subsequent problem, but again no mention was made of the fact that the stone had not moved.

The hypothetical question propounded to Dr. Zangwill failed to relate the proved fact that the stone had not moved, and therefore was based on an assumption which was contrary to the evidence, and to his statement on cross-examination that if the stone had not moved he would not be able to state there was a causal connection between the accident and plaintiff's subsequent operation. Thus, in consideration of the missing facts in the

hypothetical question, and Dr. Zangwill's statement on cross-examination, it is seen that plaintiff's only medical expert could not connect the accident with the subsequent operation. Considering this with the other evidence presented, we find that plaintiff failed to show a causal connection between the accident and his operation for the kidney stone. Dr. Zangwill would only state that the accident was a "possible contributing factor" to plaintiff's subsequent problems. It is interesting to note that nowhere in the record do the results of Dr. Zangwill's examination on February 16, 1967, of plaintiff appear.

Although the plaintiff strongly relies on *Pygman v. Helton,* 148 W.Va. 281, 134 S.E.2d 717 (1964), that case is clearly distinguishable from the instant case. In *Pygman* there was uncontradicted testimony that the hernia had not existed prior to the collision, while in the present case it is conclusively shown that the kidney stone had existed as early as 1964. In each case the medical testimony related a possible causal connection between the injury and the collision. In the former case such evidence was corroborated, while in the latter, not only was Dr. Zangwill's testimony uncorroborated, in the circumstances described above, it was purely speculative and insufficient on causation for jury consideration.

We reaffirm the rule expressed in *Pygman v. Helton, supra.* We find, however, that the medical evidence in the instant case was not of such character as would warrant a reasonable inference by the jury that the renal colic attack was caused by the neglect act of the defendant.

We, therefore, conclude, upon reconsideration of the entire record and after reargument by counsel for the respective parties, that the trial court was correct in excluding from the jury's consideration plaintiff's expenses, loss of earnings and pain and suffering resulting from the kidney stone operation. In view of the foregoing, the judgment of the Circuit Court of Brooke County is affirmed.

*Affirmed.*