297 S.E.2d 881

**Patrick Joseph ADKINS, an infant, et al.**

v.

**Ronald K. WHITTEN, Partner, etc., et al.**

**No. 15530.**

Supreme Court of Appeals of West Virginia.

Nov. 19, 1982.

Louis R. Tabit, Montgomery, for appellees.

Jack A. Mann, Lynch, Mann & Knapp, Beckley, for appellants.

MILLER, Chief Justice:

In this appeal of a personal injury case from the Circuit Court of Fayette County, we are asked to determine if it is reversible error for the trial court to instruct the jury as to the effect of its percentage finding of comparative negligence on the plaintiff-appellee's damage award. We hold that it is not and affirm the lower court's judgment.

■ In this case the jury found that the plaintiff sustained damages resulting from the accident in the amount of $100,000. The plaintiff was found to be 15 percent negligent under our comparative negligence law as summarized in Syllabus Point 3 of *Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979):

"A party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident." [1]

The defendant urges that we adopt a "blindfold" rule that would preclude informing the jury as to the effect of its finding of some percentage of contributory negligence against the plaintiff. The defendant's major argument is that to instruct the jury concerning the effects of the answers to special interrogatories in a comparative negligence case may reduce the likelihood of an impartial verdict in that the jury is more likely to set the amount of damages higher in order to ensure an award to the plaintiff that accords with the jury's sympathies.

A majority of the courts that have considered the "blindfold" rule have refused to adopt it and have concluded that it is not reversible error for the trial court to give an instruction informing the jury as to the effect of its percentage finding of contributory negligence against the plaintiff. *See Cruthirds v. RCI, Inc.,* 624 F.2d 632 (5th Cir.1980); *Porche v. Gulf Mississippi Marine Corporation,* 390 F.Supp. 624 (E.D. La.1975); *Cobb v. Atkins,* 239 Ark. 151, 388 S.W.2d 8 (1965); *Hoffman v. Jones,* 280 So.2d 431, 78 A.L.R.3d 321 (Fla.1973); *Christiansen v. Robertson,* 237 Ga. 711, 229 S.E.2d 472 (1976); *Seppi v. Betty,* 99 Idaho 186, 579 P.2d 683 (1978); *Cook v. Doty,* 4 Kan.App.2d 499, 608 P.2d 1028 (1980); *Wing v. Morse,* 300 A.2d 491 (Me. 1973); *Rosenthal v. Kolars,* 304 Minn. 378, 231 N.W.2d 285 (1975); *Roman v. Mitchell,* 82 N.J. 336, 413 A.2d 322 (1980); *Smith v. Gizzi,* 564 P.2d 1009 (Okl.1977); *Peair v. Home Association of Enola Legion No. 751,* 287 Pa.Super. 400, 430 A.2d 665 (1981). In a number of these cases the courts were dealing with general comparative negligence statutes which provided no guidelines on the "blindfolding" question. Con-

---

1. Various aspects of the doctrine have been discussed in the following cases: *Sitzes v. Anchor Motor Freight, Inc.,* 169 W.Va. 698, 289 S.E.2d 679 (1982); *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981); *Bowman v. Barnes,* 168 W.Va. 111, 282 S.E.2d 613 (1981).

sequently, the courts were forced to make their own determination of the issue.

Both Idaho and New Jersey recently have had occasion to extensively examine this subject. The Supreme Court of Idaho in *Seppi v. Betty, supra,* traced the early development of the "blindfold" rule in Minnesota, Texas and Wisconsin,[2] noting that both Minnesota and Texas had altered their position by court rule.[3] The court also pointed out that while Colorado had initially opted for the "blindfold" rule in *Avery v. Wadlington,* 186 Colo. 158, 526 P.2d 295 (1974), this result was changed by the Colorado Legislature.[4] The Idaho Court discussed at some length the inequity of the "blindfold" rule where there is negligence on the part of the plaintiff and a comparative negligence rule exists barring recovery if he is found to be 50 percent or more at fault:

> "In the case where it is clear that both parties were negligent to some extent, a 50–50 allocation of negligence is singularly attractive to a jury, particularly in a highly contested case or one in which the jurors themselves are sharply divided. Consequently, a jury, not knowing the critical importance Idaho law places on a finding of 50% negligence, may reach such a verdict too quickly and without carefully examining the facts. The rule against informing the jury of the effect of a 50–50 allocation of negligence of course places the defense counsel in a position to exploit the sense of equity implicit in such a finding without the plaintiff's counsel being able to argue the critical legal import of such a determination. Thus, the uninformed jury could easily deceive itself into believing that it has decided that the defendant should pay for half of the plaintiff's damages when in fact it has determined that the plaintiff will recover nothing at all."
> 99 Idaho at 193, 579 P.2d at 690.

The New Jersey Court in *Roman v. Mitchell,* 82 N.J. 336, 413 A.2d 322 (1980), observed that before the adoption of comparative negligence, jurors were traditionally informed of the legal effect of their finding of contributory negligence. The usual instruction was that if the jury found the plaintiff to be guilty of any contributory negligence that proximately caused his injuries, the verdict must be for the defendant.

When we modified the harsh common law doctrine of contributory negligence in *Bradley v. Appalachian Power Co., supra,* 163 W.Va. at 343, 256 S.E.2d at 885–86, we undertook a careful examination of what other states had done with their comparative negligence law and evolved this mechanism for handling the matter with a jury:

> "The jury should be required by general verdict to state the total or gross amount of damages of each party whom they find entitled to a recovery, and by special interrogatory the percentage of fault or contributory negligence, if any, attributable to each party. After the verdicts have been accepted, the trial court will calculate the net amount by deducting the party's percentage of fault from his gross award."

We also made this comment in note 17 of *Bradley, supra,* 163 W.Va. at 343, 256 S.E.2d at 886: "Obviously, by having the jury find the gross amount and the percentage of contributory negligence, the court has some ability to monitor the jury's conclusions."

The necessity for instructing the jury on the effect of its percentage finding of comparative negligence is apparent in those jurisdictions like ours where a plaintiff who is 50 percent or more at fault is barred from recovery. To withhold this vital piece of information from the jury could conceivably mislead them into believing that so

---

2. *McCourtie v. United States Steel Corporation,* 253 Minn. 501, 93 N.W.2d 552 (1958); *Grasso v. Cannon Ball Motor Freight Lines,* 125 Tex. 154, 81 S.W.2d 482 (1935); *Coats v. Town of Stanton,* 90 Wis. 130, 62 N.W. 619 (1895). Wisconsin was the first and is the foremost proponent for "blindfolding." *See De Groot v. Van Akkeren,* 225 Wis. 105, 273 N.W. 725 (1937).

3. Minn.R.Civ.P. 49.01 (as amended January 5, 1973) and Tex.R.Civ.P. 277 (as amended September 1, 1973).

4. Colo.Rev.Stat. § 13–21–111(4) (Supp.1976).

long as the plaintiff is not 100 percent at fault he would recover some damages.

Before the advent of the comparative negligence doctrine, it was rather universally held that if there were an issue as to the plaintiff's contributory negligence, the failure to instruct the jury when requested as to the effect of such negligence on barring his recovery was reversible error. 57 Am.Jur.2d *Negligence* § 299 (1971). Our rule was to this same effect. *E.g., Crum v. Ward, supra; Spurlin v. Nardo,* 145 W.Va. 408, 114 S.E.2d 913 (1960). We recognized in *Graham v. Wriston,* 146 W.Va. 484, 120 S.E.2d 713 (1961), *rev'd on other grounds, Bradley, supra,* that where the plaintiff offered a binding instruction as to the defendant's negligence, such instruction would be deemed erroneous unless it specifically negated the plaintiff's contributory negligence, where the same was a fact issue. It is, therefore, clear that the design of our prior law was to inform the jury as to the legal effect of plaintiff's negligence. We see no reason why this same design should not follow under our comparative negligence rule.

■ Moreover, under our jury trial system, it is incumbent on the court by way of instruction or charge to inform the jury as to the law that is applicable to the facts of the case. This should be the case as to our law of comparative negligence. We have consistently held that a trial court has a duty to give a proper instruction relating to an appropriate legal theory that is supported by the facts of the case. *E.g., Ab-*

*dulla v. Pittsburgh and Weirton Bus Co.,* 158 W.Va. 592, 213 S.E.2d 810 (1975); *Brown v. Crozer Coal & Land Co.,* 144 W.Va. 296, 107 S.E.2d 777 (1959); *De Luz v. Board,* 135 W.Va. 806, 65 S.E.2d 201 (1951); *Morris v. Parris,* 110 W.Va. 102, 157 S.E. 40 (1931).

To argue that a jury once informed of the comparative negligence law might manipulate it in order to favor the plaintiff assumes a biased jury. Such an argument is premised on a theory that individual jurors will disregard their oaths to follow the court's instructions as to the law. The same argument could as easily be made in regard to any instruction on any aspect of the law. We do not believe that jurors will disregard their obligations to apply the law objectively to the facts of the case.

■ From a practical standpoint it is apparent that a jury, given the type of verdict form mandated by *Bradley* which requires a gross damage verdict and a finding of the plaintiff's percentage of negligence, may well surmise that the plaintiff's negligence may reduce his damage award. It seems to us that a jury's deliberations should not be attended by such surmises but rather they should be openly informed as to the legal principles involved in our comparative negligence doctrine so that they may make a rational decision. We, therefore, conclude that a trial court has a duty to instruct the jury as to the effect of the doctrine of comparative negligence when requested.[5]

5. For the guidance of the bar and trial courts, we offer the following instruction: [The bracketed language is for multiple defendant cases.]

You are further instructed that under our law of comparative negligence, a plaintiff is not barred from recovery if his negligence does not equal or exceed 50 percent of the total negligence of all parties to the accident which total negligence our law sets at 100 percent, although the amount of his gross or total damages is reduced by his percentage of negligence.

If after considering all of the evidence, you find from a preponderance of the evidence that the defendant[s] was [were] guilty of negligence that proximately caused the plaintiff's injuries and the plaintiff was not guilty of any negligence that proximately caused his injuries then your verdict should be for the plain-

tiff and you should assess his damages utilizing the general verdict form. On the other hand, if after considering all of the evidence, you should find from a preponderance thereof, that the defendant[s] [or any one or more of them] was [were] not guilty of any negligence that proximately caused the plaintiff's injuries, then your verdict should be for the [such] defendant[s]; or, if you find that the plaintiff was guilty of negligence that proximately contributed to his injuries which negligence on the part of the plaintiff equalled or exceeded 50 percent of the total negligence, then your verdict should be for the defendant[s] and you should utilize the general verdict form.

If you find from a preponderance of the evidence that the defendant[s] [or any one or more of them] was [were] guilty of negligence

In view of the foregoing, we affirm the judgment of the Circuit Court of Fayette County.

Affirmed.

The issue presented in this appeal is whether the vendor of a dwelling house may be held liable in a suit brought by the which proximately contributed to the plaintiff's injuries and you further find from a preponderance of the evidence that the plaintiff was guilty of negligence which proximately caused his injuries but that the plaintiff's negligence did not equal or exceed 50 percent of the total negligence, then you will use the alternate verdict form. Under the alternate verdict form, you will determine the percentage of plaintiff's negligence as it relates to the total negligence of all parties which our law expresses at 100 percent. Under the alternate verdict form you will also determine the plaintiff's total damages without regard to his percentage or degree of negligence.

[Addendum where contribution is sought between codefendants:

In this case, a right of contribution has been sought between the defendants and, therefore, you will utilize the alternate verdict form and set the percentage of negligence of each defendant who has been found liable to the plaintiff. In determining the percentage of negligence, you must remember that the total percentage of negligence of all parties cannot exceed 100 percent.]