387 S.E.2d 511

**Clifford KING**

v.

**KAYAK MANUFACTURING CORPORATION.**

No. 18910.

Supreme Court of Appeals of West Virginia.

Nov. 9, 1989.

Richard E. Hamstead, Jacques R. Williams, Hamstead & Williams, Morgantown, for Kayak Mfg. Corp.

Darwin F. Johnson, Morgantown, Peter Perlman, Peter Perlman Law Offices, P.S.C., Lexington, Ky., for appellee.

MILLER, Justice.

In this product liability case, we are asked to determine whether the trial court was correct in directing a verdict in favor of the plaintiff on the issue of liability at the conclusion of all the evidence. The plaintiff became a quadriplegic after he dove into an above-ground swimming pool which contained approximately four feet of water. The defendant's chief defense was that the plaintiff, having used the pool on several occasions shortly before his final dive, was aware of the shallow depth and either assumed the risk or was contributorily negligent.

## I.

### A.

Besides rejecting these defenses as a matter of law, the trial court appeared to be of the view that following the adoption of the doctrine of comparative contributory negligence, the doctrine of assumption of risk had lost its vitality.[1] When we adopted our rule for product liability in *Morningstar v. Black & Decker Mfg. Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979),[2] we

---

**1.** Some jurisdictions have abolished the defense of assumption of risk because they can find no viable distinction between contributory negligence and assumption of risk. Consequently, they treat assumption of risk as a subset of contributory negligence. *E.g., Li v. Yellow Cab Co.*, 13 Cal.3d 804, 119 Cal.Rptr. 858, 532 P.2d 1226 (1975); *Parker v. Redden*, 421 S.W.2d 586 (Ky.1967); *Blackburn v. Dorta*, 348 So.2d 287 (Fla.1977); *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123 (La.1988); *Mizushima v. Sunset Ranch, Inc.*, 103 Nev. 259, 737 P.2d 1158 (1987); *Wentz v. Deseth*, 221 N.W.2d 101 (N.D.1974).

**2.** Our rule is set out in Syllabus Point 4 of *Morningstar:*

"In this jurisdiction the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use. The standard of reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent manufacturer's standards should have been at the time the product was made."

recognized that assumption of risk was an available defense:

"It does appear that the defense of assumption of risk is available against the plaintiff, where it is shown that with full appreciation of the defective condition he continues to use the product. The hallmark of this defense is actual knowledge on the part of the plaintiff....

"To this defense, some courts have added the further requirement that the plaintiff's conduct in proceeding to use the admittedly defective product must be unreasonable...." 162 W.Va. at 890, 253 S.E.2d at 683–84. (Citations omitted).

See also Star Furniture Co. v. Pulaski Furniture Co., 171 W.Va. 79, 297 S.E.2d 854 (1982).

After our decision in Morningstar, we reviewed the doctrine of contributory negligence in Bradley v. Appalachian Power Co., 163 W.Va. 332, 256 S.E.2d 879 (1979), and determined that it should be modified, as many other jurisdictions had done, to permit a form of comparative contributory negligence. We outlined our rule in Syllabus Point 3 of Bradley:

"A party is not barred from recovering damages in a tort action so long as his negligence or fault does not equal or exceed the combined negligence or fault of the other parties involved in the accident."

In Bradley, we used the term "comparative negligence" as a shorthand method of referring to comparative contributory negligence. It is clear, however, from Syllabus Point 3 of Bradley that the plaintiff's contributory negligence is compared with the "negligence or fault ... of the other parties involved" and so long as the plaintiff's negligence or fault "does not equal or exceed" that of the other actors, the plaintiff is not barred from recovery because of his contributory negligence.[3]

■ Thus, under Bradley, it is not initially necessary for the jury to make a comparison of each individual defendant's negligence. The first determination is whether the plaintiff's percentage of contributory negligence bars recovery. On this issue, the jury is instructed to determine if the defendants are liable to the plaintiff. Then the percentage, or degree, of the plaintiff's contributory negligence is compared to that of all of the other parties involved in the accident.[4]

In Adkins v. Whitten, 171 W.Va. 106, 297 S.E.2d 881 (1982), we held that a jury should be instructed on the effect of the comparative negligence doctrine and the fact that if the plaintiff is more than 50 percent negligent, he may not recover damages. This instruction enables the jury to understand the mechanics of the comparative contributory negligence rule.[5]

■ The question of the defendant's right to comparative contribution, i.e., allocation of each defendant's separate degree of fault, is a secondary issue. Obviously, it need not be addressed if the jury finds that the plaintiff's contributory negligence bars recovery, as none of the defendants is then liable in damages. Moreover, if one or more of the defendants are found not to be guilty of any primary negligence, such defendant is not liable for any contribution.[6] Furthermore, the right of compara-

---

3. In Syllabus Point 5 of Star Furniture Co. v. Pulaski Furniture Co., supra, we held that comparative contributory negligence is also available in a product liability case.

4. In Bowman v. Barnes, 168 W.Va. 111, 282 S.E.2d 613 (1981), we stated in Syllabus Point 3 that the comparison of negligence was to be not just between the defendants involved in the litigation, but between all those whose negligence contributed to the accident: "In order to obtain a proper assessment of the total amount of the plaintiff's contributory negligence under our comparative negligence rule, it must be ascer-

tained in relation to all of the parties whose negligence contributed to the accident, and not merely those defendants involved in the litigation."

5. For a proposed instruction on comparative contributory negligence, see note 5 of Adkins, 171 W.Va. at 109, 297 S.E.2d at 884–85.

6. A right of contribution exists only if there are multiple defendants, one of whom is subject to paying more than his share of a joint judgment. See Syllabus Point 4, Sydenstricker v. Unipunch

280

tive contribution is not automatic, but must be requested by one of the defendants. Thus, the jury should not be asked to consider a defendant's individual degree of negligence until it has first considered the primary issues of the defendants' liability to the plaintiff and the plaintiff's degree of contributory negligence.

■ We reviewed the principles of comparative contribution in *Sitzes v. Anchor Motor Freight, Inc.*, 169 W.Va. 698, 289 S.E.2d 679 (1982), where we acknowledged that such a right existed between joint tortfeasors. We recognized, as have other courts, that it is only equitable that a defendant should have a right of contribution against fellow joint tortfeasors if such defendant is required to pay the plaintiff more than his allocated share of fault.[7] We also held in *Sitzes* that the right of comparative contribution was not automatic, as "it can only be invoked by one of the joint tortfeasors in the litigation ... by requesting ... special interrogatories pursuant to Rule 49(b) of the West Virginia Rules of Civil Procedure[.]" 169 W.Va. at 713, 289 S.E.2d at 688. The right of joint tortfeasors to obtain comparative contribution *inter se* does not alter the plaintiff's right to joint and several liability on a judgment that is obtained against joint tortfeasors. This right was reaffirmed in *Sitzes*.[8]

### B.

We have not had an opportunity since *Bradley* to determine whether, in light of our adoption of comparative contributory

negligence, the doctrine of assumption of risk should be modified. In *Pack v. Van Meter*, 177 W.Va. 485, 354 S.E.2d 581 (1986), we limited the availability of the defense of assumption of risk where the defendant had breached a duty imposed by a statutory safety scheme. In the course of discussing the assumption of risk doctrine, we stated in note 11 of *Pack*, 177 W.Va. at 491, 354 S.E.2d at 587:

"The parties do not raise and, therefore, we do not address the question of whether in view of our comparative negligence law established in *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), there is a need to retain the doctrine of assumption of risk. There is a split of authority on this issue elsewhere. Annot., 16 A.L.R.4th 700 (1982)."

*See also Ventura v. Winegardner*, 178 W.Va. 82, 85 n. 3, 357 S.E.2d 764, 767 n. 3 (1987).

Our doctrine of assumption of risk has been acknowledged to be related to contributory negligence, and the "distinction is sometimes a troublesome matter[.]" *Spurlin v. Nardo*, 145 W.Va. 408, 417, 114 S.E.2d 913, 919 (1960). Nevertheless, in Syllabus Point 5 of *Spurlin*, we made this delineation:

"Contributory negligence and assumption of risk are not identical. The essence of contributory negligence is carelessness; of assumption of risk, venturousness. Knowledge and appreciation of the danger are necessary elements of assumption of risk. Failure to use due

---

*Products, Inc.*, 169 W.Va. 440, 288 S.E.2d 511 (1982). Before the rule of comparative contribution, the common law rule was that each defendant paid a *pro tanto* share of the judgment, i.e., if three defendants were bound on the judgment, each paid one-third. For a history of the contribution rule, see *Sitzes v. Anchor Motor Freight, Inc.*, 169 W.Va. 698, 709, 289 S.E.2d 679, 685 (1982).

**7.** Syllabus Points 3 and 4 of *Sitzes* state:

"3. As between joint tortfeasors, a right of comparative contribution exists *inter se* based upon their relative degrees of primary fault or negligence.

"4. Once comparative fault in regard to contribution is recognized, recovery can be

had by one joint tortfeasor against another joint tortfeasor *inter se* regardless of their respective degree of fault so long as the one has paid more than his *pro tanto* share to the plaintiff."

**8.** Syllabus Point 2 of *Sitzes* states:

"This jurisdiction is committed to the concept of joint and several liability among joint tortfeasors. A plaintiff may elect to sue any or all of those responsible for his injuries and collect his damages from whomever is able to pay, irrespective of their percentage of fault. Our adoption of a modified rule for contributory negligence in *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979), did not change our adherence to joint and several liability."

care under the circumstances constitutes the element of contributory negligence."

In *Hollen v. Linger*, 151 W.Va. 255, 263, 151 S.E.2d 330, 335 (1966), we summarized the doctrine in these terms:

"The doctrine of assumed or incurred risk is based upon the existence of a factual situation in which the act of the defendant alone creates the danger and causes the injury and the plaintiff voluntarily exposes himself to the danger with full knowledge and appreciation of its existence."

Our assumption of risk doctrine requires actual knowledge of the dangerous condition, in accordance with the general rule elsewhere.[9] *See also Ventura v. Winegardner, supra; Cross v. Noland,* 156 W.Va. 1, 190 S.E.2d 18 (1972); *Korzun v. Shahan,* 151 W.Va. 243, 151 S.E.2d 287 (1966).

In recent years, with the almost universal adoption of comparative contributory negligence, courts have reconsidered whether the assumption of risk defense should operate as an absolute bar to the plaintiff's recovery. It appears that a majority of those jurisdictions which have adopted comparative contributory negligence have also adopted comparative assumption of risk.[10] The result is that under a comparative assumption of risk system, the defense of assumption of risk, if established, no longer operates as a complete bar to the plaintiff's recovery. Instead, the plaintiff's degree of fault arising from the assumption of risk is determined by the jury, and the total award of damages is then diminished accordingly.

This result has been achieved by acknowledging that both contributory negligence and assumption of risk focus on the fault of the plaintiff. There is a further recognition that both doctrines had their origins in the common law and were unduly harsh because if the plaintiff's fault contributed in any degree to the injuries, there could be no recovery.[11] We recognized the harshness of the common law rule of contributory negligence in *Bradley,* as well as the fact that it had been abrogated in a majority of other jurisdictions. The same situation exists with the doctrine of assumption of risk.

It also appears that when comparative assumption of risk has been adopted in a given jurisdiction, it parallels the formulation of that jurisdiction's comparative contributory negligence doctrine. In *Bradley,* we selected a form of comparative contributory negligence in which the plaintiff could recover damages so long as his fault did not "equal or exceed the combined negligence or fault of the other parties involved in the accident." Syllabus Point 3, in part, *Bradley.*[12]

**9.** *Dura Corp. v. Harned,* 703 P.2d 396 (Alaska 1985); *Culp v. Rexnord & Booth–Rouse Equip. Co.,* 38 Colo.App. 1, 553 P.2d 844 (1976); *Duffy v. Midlothian Country Club,* 135 Ill.App.3d 429, 90 Ill.Dec. 237, 481 N.E.2d 1037 (1985); *Hughes v. Magic Chef, Inc.,* 288 N.W.2d 542 (Iowa 1980); *Zahrte v. Sturm, Ruger & Co., Inc.,* 203 Mont. 90, 661 P.2d 17 (1983); *General Elec. Co. v. Bush,* 88 Nev. 360, 498 P.2d 366 (1972); *Olson v. A.W. Chesterton Co.,* 256 N.W.2d 530 (N.D.1977); *Kennedy v. Providence Hockey Club, Inc.,* 119 R.I. 70, 376 A.2d 329 (1977); *Smith v. Smith,* 278 N.W.2d 155 (S.D.1979); *Klein v. R.D. Werner Co., Inc.,* 98 Wash.2d 316, 654 P.2d 94 (1982); Restatement (Second) of Torts § 402A, comment n (1986).

**10.** Several states' statutes include the phrase "assumption of risk" in their definition of fault. *See* Ark.Code Ann. § 16–64–122 (1987); Iowa Code § 668.1, *et seq.* (1987); Minn.Stat. § 604.-01(1a) (1988); Utah Code Ann. § 78–27–38 (1987). In several comparative negligence jurisdictions whose statutes do not include assump-

tion of risk in their definition of fault, the courts have compared the plaintiff's assumption of risk to reduce the plaintiff's damages in product liability actions. *E.g., Blackburn v. Dorta, supra; Austin v. Raybestos–Manhattan, Inc.,* 471 A.2d 280 (Me.1984); *Zahrte v. Sturm, Ruger & Co., supra; Scott v. Rizzo,* 96 N.M. 682, 634 P.2d 1234 (1981); *Mauch v. Manufacturers Sales & Serv., Inc.,* 345 N.W.2d 338 (N.D.1984). *See generally* 57B Am.Jur.2d *Negligence* §§ 1201–1204 (1989); Annot., 16 A.L.R.4th 700 (1982).

**11.** In Syllabus Point 7 of *Crum v. Ward,* 146 W.Va. 421, 122 S.E.2d 18 (1961), we held that the traditional contributory negligence rule barring recovery is applicable if the plaintiff's negligence proximately contributed "however slight" to his injury. The defense of assumption of risk totally barred recovery in *Hunn v. Windsor Hotel Co.,* 119 W.Va. 215, 193 S.E. 57 (1937).

**12.** Our rule of comparative contributory negligence is similar to that adopted in the majority

■ We spent a considerable amount of time in *Bradley* reviewing the "pure" comparative negligence concept judicially adopted in several other states.[13] We found this rule to be a too "radical break from the common law's tort-fault methodology" and concluded: "[W]e are not willing to abandon the concept that where a party substantially contributes to his own damages, he should not be permitted to recover for any part of them." 163 W.Va. at 341, 256 S.E.2d at 885.[14] We still believe our apportionment rule to be a correct balancing of interests, and we adopt it for purposes of comparative assumption of risk.

■ As we noted earlier, some jurisdictions have merged their assumption of risk doctrine into their comparative contributory negligence doctrine.[15] This result has usually been justified on the ground that there are substantial similarities between the two concepts. We do not find that such similarities exist in this jurisdiction. The predicate of assumption of risk is that the plaintiff has full knowledge and appreciation of the dangerous condition and voluntarily exposes himself to it. This is a high standard, and in several cases we have held that, as a matter of law, an assumption of risk instruction should not have been given. *Cross v. Noland, supra; Hollen v. Linger, supra.*

Thus, we retain the defense of assumption of risk, but modify it to bring it in line with the doctrine of comparative contributory negligence set out in *Bradley*. We hold that a plaintiff is not barred from recovery by the doctrine of assumption of risk unless his degree of fault arising therefrom equals or exceeds the combined fault or negligence of the other parties to the accident.[16] As in the case of comparative contributory negligence under *Bradley*, where assumption of risk has been shown, the instructions should only require that the plaintiff's degree of fault be ascertained.[17]

of other jurisdictions. *See generally* 57B Am. Jur.2d *Negligence* §§ 1146–1149 (1989).

**13.** At the time *Bradley* was decided, four states had adopted a "pure" no-fault approach to contributory negligence. Under this concept, the plaintiff's degree of contributory negligence does not bar recovery, but only diminishes the amount of damages by the degree of fault. *E.g., Kaatz v. State,* 540 P.2d 1037 (Alaska 1975); *Li v. Yellow Cab Co., supra; Hoffman v. Jones,* 280 So.2d 431 (Fla.1973); *Kirby v. Larson,* 400 Mich. 585, 256 N.W.2d 400 (1977).

Since *Bradley,* five other state courts have adopted a "pure" no-fault contributory negligence doctrine. *Alvis v. Ribar,* 85 Ill.2d 1, 52 Ill.Dec. 23, 421 N.E.2d 886 (1981); *Goetzman v. Wichern,* 327 N.W.2d 742 (Iowa 1982); *Hilen v. Hays,* 673 S.W.2d 713 (Ky.1984); *Gustafson v. Benda,* 661 S.W.2d 11 (Mo.1983); *Scott v. Rizzo, supra.* The Illinois and the Iowa legislatures have since modified their case law and have enacted statutes that bar recovery if the plaintiff is over 50 percent at fault. Ill.Rev.Stat. ch. 110, ¶¶ 2–1107.1 & 2–1116 (1986); Iowa Code Ann. §§ 668.1, *et seq.* (1987). *See* 57B Am.Jur.2d *Negligence* §§ 1407, 1426 (1989).

**14.** *Bradley's* comparative contributory negligence concept initially received mixed reviews from commentators. *See* Cady, *Alas and Alack, Modified Comparative Negligence Comes to West Virginia,* 82 W.Va.L.Rev. 473 (1980); Emch, *Comparative Negligence in West Virginia: A Defense Overview,* 82 W.Va.L.Rev. 493 (1980). This concept has now become an accepted part of our tort law. Stoneking, *Beyond Bradley: A Critique of Comparative Contribution in West Virginia and Proposals for Legislative Reform,* 89 W.Va.L.Rev. 167 (1986); Lewin, *Comparative Negligence in West Virginia: Beyond Bradley to Pure Comparative Fault,* 89 W.Va.L.Rev. 1039 (1987).

**15.** *See* note 1, *supra.*

**16.** We use the phrase "other parties to the accident," as we have in comparative contributory negligence cases. *See Bowman v. Barnes, supra* note 4.

**17.** We offer the following proposed comparative assumption of risk instruction:

"Under our law, the plaintiff can be guilty of assumption of risk and still be entitled to recover damages from the defendant[s] so long as the plaintiff's fault from assumption of risk does not equal or exceed the combined negligence of the other parties whose negligence contributed to the accident.

"If, after considering all the evidence, you find from a preponderance of the evidence that the defendant[s] was [were] guilty of negligence that proximately contributed to the plaintiff's injury and that the plaintiff was not guilty of any fault which caused his or her injury, then your verdict should be for the plaintiff and you should assess damages.

"In the event you should find the plaintiff guilty of fault which proximately contributed

There appears to be no substantial disagreement [18] among those jurisdictions that have adopted comparative assumption of risk that it is applicable to a product liability case based on strict liability in tort.[19] We, therefore, confirm *Morningstar*'s statements that the defense of assumption of risk is available against a plaintiff in a product liability case where it is shown that the plaintiff had actual knowledge of the defective or dangerous condition, fully appreciated the risks involved, and continued to use the product. However, the plaintiff is not barred from recovery unless his degree of fault under assumption of risk equals or exceeds the combined fault of the other parties to the accident.

In *Bradley*, we recognized that in adopting the principle of comparative contributory negligence, we could not anticipate every issue that might arise. We did, however, attempt to deal with several key issues, and we believe it advisable to do so in addressing comparative assumption of risk.

First, we have in the past recognized that the defense of assumption of risk is not available where the defendant's conduct is willful, malicious, or grossly negligent. *Korzun v. Shahan, supra; Stone v. Rudolph*, 127 W.Va. 335, 32 S.E.2d 742 (1944). A common counterpart to this rule is found where one athlete sues another for injuries received as a result of physical contact occurring during athletic events. In these situations, some courts have concluded that assumption of risk may act as a bar to recovery unless there is proof that the defendant acted in a willful, wanton, or reckless manner. *E.g., Kuehner v. Green*, 436 So.2d 78 (Fla.1983); *Ridge v. Kladnick*, 42 Wash.App. 785, 713 P.2d 1131 (1986).[20]

Other courts have looked at this question from the standpoint of the duty owed. These courts hold that a participant owes only a duty to refrain from willful, wanton, or reckless misconduct with regard to a fellow participant. *E.g., Hackbart v. Cincinnati Bengals, Inc.*, 601 F.2d 516 (10th Cir.), *cert. denied*, 444 U.S. 931, 100 S.Ct. 275, 62 L.Ed.2d 188 (1979); *Santiago v. Clark*, 444 F.Supp. 1077 (N.D.W.Va.1978); *Nabozny v. Barnhill*, 31 Ill.App.3d 212,

---

to his or her injuries, you should compare the plaintiff's fault to the combined negligence of the other parties to the accident and determine the degree of the plaintiff's fault expressed as a percentage of 100 percent.

"If the plaintiff's degree of fault is less than 50 percent, you will determine the total damages that the plaintiff is entitled to recover. The court will then reduce the total damages by the percentage of the plaintiff's fault. If you find that the plaintiff's fault is 50 percent or greater, the plaintiff is not entitled to recover any damages and your verdict shall be for the defendant[s]. A verdict form will be given to you on which to make your findings." In those cases where both comparative assumption of risk and contributory negligence are found to be jury questions, the phrase "contributory negligence or assumption of risk" could be inserted in the first paragraph, and the phrase "plaintiff's negligence or fault" used throughout the remaining portion of the instruction.

**18.** The Ohio Supreme Court, without citing any authority, and by a closely divided vote, declined to adopt comparative assumption of risk in a product liability case. *Onderko v. Richmond Mfg. Co.*, 31 Ohio St.3d 296, 511 N.E.2d 388 (1987). Several courts have refused to interpret their comparative negligence statutes as limiting the doctrine of assumption of risk.

*E.g., Riley v. Davison Constr. Co., Inc.*, 381 Mass. 432, 409 N.E.2d 1279 (1980); *Kennedy v. Providence Hockey Club, Inc., supra.* A New York court has found its comparative negligence statute to include assumption of risk, which, if proved, operates only to proportionately reduce a plaintiff's recovery. *Lamphear v. State*, 91 A.D.2d 791, 458 N.Y.S.2d 71 (1982).

**19.** *E.g., Caterpillar Tractor Co. v. Beck*, 593 P.2d 871 (Alaska 1979); *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978); *West v. Caterpillar Tractor Co., Inc.*, 336 So.2d 80 (Fla.1976); *Kaneko v. Hilo Coast Processing*, 65 Haw. 447, 654 P.2d 343 (1982); *Coney v. J.L.G. Indus., Inc.*, 97 Ill.2d 104, 73 Ill.Dec. 337, 454 N.E.2d 197 (1983); *Murray v. Ramada Inns, Inc., supra; Matkovic v. Shell Oil Co.*, 218 Mont. 156, 707 P.2d 2 (1985); *Campbell v. ITE Imperial Corp.*, 107 Wash.2d 807, 733 P.2d 969 (1987).

**20.** The problem with an assumption of risk analysis in physical contact sports is resolving whether the plaintiff had actual knowledge of the risk that caused the injury. Some courts analyze this problem by classifying assumption of risk into categories. *See Prosser & Keeton on Torts* 496–98 (5th ed. 1984). *This type of approach seems unduly arcane and complicated.*

334 N.E.2d 258 (1975); *Gauvin v. Clark*, 404 Mass. 450, 537 N.E.2d 94 (1989); *Ross v. Clouser*, 637 S.W.2d 11 (Mo.1982); *Kabella v. Bouschelle*, 100 N.M. 461, 672 P.2d 290 (1983); *Turcotte v. Fell*, 115 A.D.2d 727, 496 N.Y.S.2d 543 (1985), *aff'd*, 68 N.Y.2d 432, 510 N.Y.S.2d 49, 502 N.E.2d 964 (1986).[21] We prefer the participant contact rule where no assumption of risk question is involved and the key is the limited duty owed, i.e., not to willfully, wantonly, or recklessly injure a fellow participant.

The participant contact rule is to be distinguished from the situation where a spectator or participant is injured as a collateral consequence of the activity, such as being struck by a foul ball or a stray hockey puck. In this situation, most courts find that the park operator's duty is limited to screening the most dangerous section of the arena. *E.g., Quinn v. Recreation Park Ass'n*, 3 Cal.2d 725, 46 P.2d 144 (1935); *Maytnier v. Rush*, 80 Ill.App.2d 336, 225 N.E.2d 83 (1967); *Brisson v. Minneapolis Baseball & Athletic Ass'n*, 185 Minn. 507, 240 N.W. 903 (1932); *Crane v. Kansas City Baseball & Exhibition*, 168 Mo.App. 301, 153 S.W. 1076 (1913); *Erickson v. Lexington Baseball Club*, 233 N.C. 627, 65 S.E.2d 140 (1951); *Akins v. Glens Falls City School Dist.*, 53 N.Y.2d 325, 441 N.Y.S.2d 644, 424 N.E.2d 531 (1981); *Cincinnati Baseball Club v. Eno*, 112 Ohio St. 175, 147 N.E. 86 (1925); *Lang v. Amateur Softball Ass'n of America*, 520 P.2d 659 (Okla.1974); *Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 394 A.2d 546 (1978); *Friedman v. Houston Sports Ass'n*, 731 S.W.2d 572 (Tex.App.1987); *Hamilton v. Salt Lake City Corp.*, 120 Utah 647, 237 P.2d 841 (1951); *Leek v. Tacoma Baseball Club*, 38 Wash.2d 362, 229 P.2d 329 (1951); Annot., 91 A.L.R.3d 24 (1979). Here, again, the emphasis is not on assumption of risk, but on the limited duty owed.

■ Admittedly, in some of these cases, courts speak of the spectator assuming the ordinary hazards incident to the particular activity, but such statements are not made in the traditional formulation of assumption of risk.[22] The more appropriate analysis acknowledges that the owner of the facility has no duty to protect an invitee against the ordinary hazards of the sports activity. This same analysis extends to a participant. Thus, a ski slope that becomes ice-covered or an ice skating rink where the ice is gouged by other skaters should not usually result in the owner becoming liable to those injured because of these conditions.[23]

## C.

■ In *Bradley*, after adopting the comparative contributory negligence rule, we embarked on a rather lengthy discussion on whether the new rule would be made fully retroactive, i.e., available to those cases that were presently pending or that had been tried and the issue of comparative assumption of risk was preserved for appeal. We identified in Syllabus Point 5 of *Bradley* the various factors that are

---

**21.** The rationale underlying this rule is stated in *Gauvin v. Clark*, 404 Mass. at 454, 537 N.E.2d at 96: "The courts are wary of imposing wide tort liability on sports participants, lest the law chill the vigor of athletic competition." (Citation omitted).

**22.** *E.g., Neinstein v. Los Angeles Dodgers, Inc.*, 185 Cal.App.3d 176, 229 Cal.Rptr. 612 (1986); *Modec v. City of Eveleth*, 224 Minn. 556, 29 N.W.2d 453 (1947); *Ingersoll v. Onondaga Hockey Club*, 245 A.D. 137, 281 N.Y.S. 505 (1935).

**23.** This is not to say that the owner of premises where recreational or sports activities occur is relieved of liability for defective machinery or equipment that cause injury to patrons. The owner ordinarily has a duty to maintain the physical condition of his premises in a reasonably safe condition for invited patrons. *George v. Fox West Coast Theatres*, 21 Ariz.App. 332, 519 P.2d 185 (1974); *Sauro v. Arena Co.*, 171 Conn. 168, 368 A.2d 58 (1976); *Stevens v. Jefferson*, 436 So.2d 33 (Fla.1983); *Fitzgerald v. Gulf Int'l Cinema Corp.*, 489 So.2d 306 (La.App.1986); *Powers v. Huizing*, 9 Mich.App. 437, 157 N.W.2d 432 (1968); *Early v. N.L.V. Casino Corp.*, 100 Nev. 200, 678 P.2d 683 (1984); *Roll 'R' Way Rinks, Inc. v. Smith*, 218 Va. 321, 237 S.E.2d 157 (1977); *Denton v. Third Avenue Theatre Co.*, 126 W.Va. 607, 29 S.E.2d 353 (1944); *Seewaldt v. Mount Snow, Ltd.*, 150 Vt. 238, 552 A.2d 1201 (1988); Annot., 88 A.L.R.2d 1090 (1963); Annot., 55 A.L.R.2d 866 (1957).

utilized to determine full retroactivity.[24] We summarized these factors in *Sitzes*, 169 W.Va. at 703–04, 289 S.E.2d at 683:

"(1) [W]hether the issue involves a settled area of the law where retroactivity would be less justified or a changing area where retroactivity would be more likely and whether the new rule is foreshadowed; (2) procedural rules are more likely to be afforded retroactivity than substantive points; (3) common law rule changes are more likely to be applied retroactively; (4) substantial public policy changes are less likely to be applied retroactively; (5) the more radical departure from prior law the less likelihood for retroactivity; and (6) analogous decisions of other jurisdictions."

The comparative contributory negligence rule in *Bradley* involved the tort law—an area traditionally subject to modification. The new rule did not effect a radical change because it did not abolish contributory negligence. Furthermore, we found the rule was limited in scope because it primarily affected private parties on a case-by-case basis, and involved a limited time period, i.e., the two-year statute of limitations. As a consequence, we made the new rule fully retroactive for personal injuries. We also observed that other jurisdictions had made their new comparative contributory negligence rules fully retroactive.

The same analysis is applicable to our rule of comparative assumption of risk, and for the same reasons we conclude that the doctrine of comparative assumption of risk should be made fully retroactive. Consequently, comparative assumption of risk is available in all cases tried after the date of this opinion, including those on retrial. Additionally, it applies on appeal if the point was preserved at trial.

### D.

█ In this case, the central issue is whether the trial court was correct in holding, as a matter of law, that the plaintiff was entitled to a directed verdict of liability, despite the defendant's claims of contributory negligence and assumption of risk. Our standard for directing a verdict on liability is found in Syllabus Points 4 and 5 of *Sommerville v. Pennsylvania R.R. Co.*, 151 W.Va. 709, 155 S.E.2d 865 (1967):

"4. When the material facts are undisputed and reasonable men can draw only one conclusion from them, the question of negligence is a question of law for the court.

"5. Where the evidence given on behalf of the defendant is clearly insufficient to support a verdict for him so that such verdict, if returned by a jury, must be set aside, and the evidence of the plaintiff is clear and convincing, it is the duty of the trial court, when so requested, to direct a verdict for the plaintiff."

*See also Jones, Inc. v. W.A. Wiedebusch Plumbing & Heating Co.*, 157 W.Va. 257, 201 S.E.2d 248 (1973).

There are several material factual disputes that exist in this case. The plaintiff testified that he dove with his arms outstretched above his head. As he leveled off near the bottom of the pool, he struck his head on the drain outlet that protruded approximately one and one-half or two

---

**24.** Syllabus Point 5 of *Bradley* states:

"In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limited retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions."

inches above the bottom. He admitted that he was aware that the water was approximately four feet deep. The plaintiff had only swum once or twice a year in the five years before the accident. He was neither an expert swimmer nor a diver, and he had only swum in an above-ground pool once before. He had seen other people, including his brother, dive into the pool and denied knowledge that such a dive could cause so severe an injury. He testified that he did not see the two "No Diving" signs, which were approximately six inches long and two and one-half inches wide.[25]

The defendant produced testimony that the plaintiff, besides knowing the depth of the pool, had elected to make a so-called "sailor's dive," by diving into the pool with his arms at his side rather than above his head. This act, in light of the plaintiff's knowledge of the pool depth, could constitute contributory negligence. Courts in other jurisdictions have indicated that making a deep dive into a shallow pool constitutes a failure to exercise reasonable care for one's own safety. *E.g., Schenck v. Pelkey*, 176 Conn. 245, 405 A.2d 665 (1978); *Caruso v. Aetna Ins. Co.*, 186 So.2d 851 (La.App.1966); *Vallillo v. Muskin Corp.*, 212 N.J.Super. 155, 514 A.2d 528 (1986), *cert. denied*, 109 N.J. 496, 537 A.2d 1287 (1987); *Smith v. Stark*, 67 N.Y.2d 693, 499 N.Y.S.2d 922, 490 N.E.2d 841 (1986); *Benjamin v. Deffet Rentals, Inc.*, 66 Ohio St.2d 86, 419 N.E.2d 883 (1981).

An assumption of risk analysis yields much the same result. The jury could have believed that the plaintiff made a sailor's dive and that he was aware of the rather shallow depth of the pool because he was in it prior to the last dive. The jury could then reasonably have concluded that the plaintiff had actual knowledge of the risk of serious injury.

In view of these factual conflicts, we believe it was error for the court not to give an assumption of risk instruction. This same defense was at issue in *Ventura v. Winegardner*, 178 W.Va. 82, 357 S.E.2d 764 (1987), where a motel guest was engaged in horseplay at night and, while running in an unlit area, fell over a bank, injuring herself. We concluded that the trial court erred in refusing to give an assumption of risk instruction, stating this principle in Syllabus Point 2:

"'Where [in a trial by jury] there is competent evidence tending to support a pertinent theory in the case, it is the duty of the trial court to give an instruction presenting such theory when requested to do so. *McAllister v. Weirton Hospital Co.*, 173 W.Va. 75, 81, 312 S.E.2d 738, 744 (1983) (citations omitted).' Syl. pt. 2, *Brammer v. Taylor*, 175 W.Va. 728, 338 S.E.2d 207 (1985)."

In light of the foregoing, we hold that the trial court erred by directing a verdict in favor of the plaintiff.

## II.

Other errors are alleged by the defendant, and, in view of the retrial, we will discuss them.

### A.

■ The defendant contends that the trial court erred by prohibiting the plain-

---

**25.** We do not doubt that the plaintiff's expert testimony with regard to the defectiveness of the design, including the protruding drain and the inadequacy of the label, was sufficient to carry the question of the defendant's primary negligence to the jury. We believe the evidence favorable to the plaintiff in this case was similar to that described in *Horen v. Coleco Indus., Inc.*, 169 Mich.App. 725, 730–31, 426 N.W.2d 794, 797 (1988), where the court stated:

"The record indicates: (1) that the manufacturer published promotional advertisements showing people diving into similar above-ground pools; (2) that the manufacturer knew that many people did not appreciate the risks of death or paraplegia associated with diving;

(3) that defendants sold this type of above-ground pool primarily to recreational, untrained divers, with knowledge that an untrained diver might not be able to make a safe dive into it although a trained diver could; (4) that defendants admitted it to be foreseeable that users of the pool might employ the manufacturer-supplied deck as a diving platform; (5) that defendants' expert witness admitted that the public was generally unaware of the risk of catastrophic injury associated with diving into such pools; and (6) that, although defendants officially recognized the diving danger ..., they did not provide the type of warning signs recommended by the American National Standards Institute[.]"

tiff's treating physician, George Nugent, M.D., from testifying during cross-examination as to the proximate cause of the plaintiff's injuries. In vouching the record out of the jury's presence, Dr. Nugent testified that the lacerations on top of the plaintiff's head and the compression fracture sustained by the plaintiff indicated that he dove into the pool head first. The defendant contends that this testimony would have discredited the plaintiff's testimony that he suffered his injury while swimming parallel to the bottom of the pool. The trial court refused to allow Dr. Nugent to render his opinion because of the physician-patient privilege and because Dr. Nugent was not qualified to render an opinion on the cause of the plaintiff's head injury. We find that the trial court erred in refusing this testimony.

█ We have never explicitly recognized the physician-patient privilege in West Virginia. *State v. Cheshire,* 173 W.Va. 123, 128, 313 S.E.2d 61, 66 (1984); *State v. Simmons,* 172 W.Va. 590, 596–597 n. 6, 309 S.E.2d 89, 95 n. 6 (1983); F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 5.4(6) (2d ed. 1986). Even if we assume that such a privilege exists, the plaintiff waived it by offering Dr. Nugent as a witness and questioning him about the plaintiff's injuries and medical treatment. *Mohr v. Mohr,* 119 W.Va. 253, 193 S.E. 121 (1937) (if plaintiff had offered physician as a witness, his offer would have been a waiver of any confidential information). *See also State v. Turrentine,* 152 Ariz. 61, 730 P.2d 238 (1986); *Roper v. Roper,* 336 So.2d 654 (Fla.App. 1976), *cert. denied,* 345 So.2d 426 (Fla. 1977); *Knighton v. Knighton,* 253 So.2d 846 (Miss.1971); *People v. Wilkins,* 65 N.Y.2d 172, 490 N.Y.S.2d 759, 480 N.E.2d 373 (1985); *State v. Olsen,* 271 Or. 369, 532 P.2d 230 (1975); *see generally* Cleary, *McCormick on Evidence* 255 (3d ed. 1984); 81 Am.Jur.2d *Witnesses* § 277 (1976).

We also find that the defendant's cross-examination of Dr. Nugent regarding his opinion as to the possible causation of the plaintiff's injury would be admissible. We have consistently held that it is permissible for a physician to testify as to the causal connection between the accident and the manner in which the plaintiff was injured. *E.g., Serbin v. Newman,* 157 W.Va. 71, 198 S.E.2d 140 (1973); *Pygman v. Helton,* 148 W.Va. 281, 134 S.E.2d 717 (1964). Of course, if the questioning seeks information that is beyond the expertise of the physician, he may so state and decline to answer.

## B.

█ The defendant also complains that the trial court erred by allowing the plaintiff to introduce advertising and promotional material which showed persons diving into similar Kayak-made, above-ground pools. The defendant advances two objections: (1) that this material had not recently been a part of their promotional campaign and (2) that the plaintiff never saw the material. In a product liability case, the manufacturer's advertising or promotional material concerning the uses of the product are a part of reasonable use of the product and may be admitted into evidence even though the user is not aware of the material. *E.g., Hiller v. Kawasaki Motors Corp. U.S.A.,* 671 P.2d 369 (Alaska 1983); *Hilliard v. A.H. Robins Co.,* 196 Cal.Rptr. 117, 148 Cal.App.3d 374 (1983); *Palmer v. A.H. Robins Co., Inc.,* 684 P.2d 187 (Colo.1984); *Garesche v. Textured Coatings of America, Inc.,* 352 So.2d 1207 (Fla.App.1977); *Leichtamer v. American Motors Corp.,* 67 Ohio St.2d 456, 424 N.E.2d 568 (1981). The Alaska Supreme Court in *Hiller* encountered a similar argument and disposed of it in note 2, 671 P.2d at 373, as follows:

"We reject Kawasaki's suggestion that the advertisement was irrelevant because it was not seen by Hiller and not even aired until after Hiller's accident. The advertisement indicates a use of the machine Kawasaki was able to foresee. 'Foreseeable use' in products liability cases focuses on what is foreseeable to the manufacturer, rather than on the subjective knowledge held by the consumer. *See Kavanaugh v. Kavanaugh,* 131 Ariz. 344, 641 P.2d 258, 262–63 (Ariz.

App.1981); *Fields v. Volkswagen of America, Inc.*, 555 P.2d 48, 56–57 (Okl. 1976)."

In Syllabus Point 6 of *Morningstar*, we focused on the intended use of the product: "The question of what is an intended use of a product carries with it the concept of all those uses a reasonably prudent person might make of the product, having in mind its characteristics, warnings and labels." This statement was not meant to be an exclusive formulation. Certainly, as foregoing courts have recognized, the manufacturer's suggested uses for a product contained in its advertising or other literature are admissible on the issue of what is an appropriate, intended use of a product.

As to the staleness of the advertising material, there was no evidence as to when this material was withdrawn. Nor was it shown that pool purchasers had been subsequently notified by the defendant to disregard the withdrawn advertisements or that diving was dangerous. Consequently, we do not believe that the trial court committed any error in admitting this material.

### C.

The defendant also claims that the trial court erred by foreclosing a discovery deposition of the plaintiff's expert. The court's order, in fact, foreclosed each side from obtaining a discovery deposition of the other's expert. It is apparent from the language of Rule 26(b)(4) of the West Virginia Rules of Civil Procedure that there is no absolute right to take a discovery deposition of the other party's testifying expert witness. The rule requires interrogatories to be utilized first and leaves to the discretion of the trial court whether further discovery is warranted.[26]

Our rule is patterned after Rule 26(b) of the Federal Rules of Civil Procedure. This summary is made in 8 C. Wright & A. Miller, *Federal Practice & Procedure: Civil* § 2029 at 250–51 (1970):

"Rule 26(b)(4) divides experts into four classes and deals separately with each.

"(1) Experts a party expects to use at trial. The opponent may learn by interrogatories the names of these trial witnesses and the substance of their testimony but further discovery concerning them can be had only on motion and court order.

"(2) Experts retained or specially employed in anticipation of litigation or preparation for trial but not expected to be used at trial. Except as provided in Rule 35 for an examining physician, the facts and opinions of experts in this category can be discovered only on a showing of exceptional circumstances.

"(3) Experts informally consulted in preparation for trial but not retained. No discovery may be had of the names or views of experts in this category.

"(4) Experts whose information was not acquired in preparation for trial. This class, which includes both regular employees of a party not specially employed on the case and also experts who were actors or viewers of the occurrences that gave rise to suit, is not included within Rule 26(b)(4) at all and facts and opinions they have are freely discoverable as with any ordinary witness." (Footnote omitted).

*See also* 4 J. Moore, *Moore's Federal Practice Civil* § 26.66 (1989).

It appears that the court here concluded that the defendant had not made a good faith effort in complying with some of the discovery requests. Furthermore, the

---

**26.** Rule 26(b)(4), W.Va.R.Civ.P., states in material part:

"Trial Preparation: Experts. Discovery of facts known and opinions held by experts, otherwise discoverable under the provisions of subdivision (b)(1) of this rule and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows:

"(A)

"(i) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion.

"(ii) Upon motion, the court may order further discovery by other means, subject to such restrictions as to scope and such provisions, pursuant to subdivision (b)(4)(C) of this rule, concerning fees and expenses as the court may deem appropriate."

court found that the defendant had delayed the request for the discovery deposition so that it could not be obtained before the previously ordered discovery deadline. We find that the trial court did not abuse its discretion.

## D.

■ The final error argued is that the defendant was restricted in the cross-examination of the plaintiff's expert, Dr. Gabrielson. The limitation was imposed because the witness had an airplane reservation. We have reviewed the transcript of his testimony, and the defendant had an extensive cross-examination. The judge remarked toward the end of the cross-examination that defense counsel had been dilatory, and gave him five minutes to complete the examination.

The defendant asserts that the purpose of further cross-examination was to explore inconsistencies between the expert's present testimony and statements he had made in prior cases. Early in the cross-examination, the defense had referred to the doctor's testimony in several other pool cases, but was unable to obtain any inconsistent admissions and appeared to have abandoned this tactic.

We do not doubt that a party is entitled to an adequate cross-examination. However, this does not mean that a court can set no time constraints. Rule 611(a) of the West Virginia Rules of Evidence recognizes the right of a trial court to impose limitations:

"*Control by Court.*—The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of

time, and (3) protect witnesses from harassment or undue embarrassment." [27]

Even before the adoption of the Rules of Evidence, we had a similar rule giving the trial court discretion to control the extent of the cross-examination of a witness. *See* Syllabus Point 4, *State v. Carduff,* 142 W.Va. 18, 93 S.E.2d 502 (1956); Syllabus Point 4, *Nees v. Julian Goldman Stores,* 109 W.Va. 329, 154 S.E. 769 (1930). We find the trial court did not abuse its discretion.

For the foregoing reasons, the judgment of the circuit court is set aside, and a new trial is awarded.

Reversed and remanded.

**27.** Rule 611(b), W.Va.R.Evid., provides:
"*Scope of Cross–Examination.*
"(1) Party Witnesses.—A party may be cross-examined on any matter relevant to any issue in the case, including credibility. In the interest of justice, the judge may limit cross-examination with respect to matters not testified to on direct examination.

"(2) Non–Party Witnesses.—Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the non-party witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."