376 S.E.2d 122

**Owen A. LILLY and Peggy J. Lilly, and C. Glen Lilly and Sara Lilly, his Wife**

v.

**Gay H. DUKE.**

**No. 17960.**

Supreme Court of Appeals of West Virginia.

Nov. 29, 1988.

Walton S. Shepherd, III, Sissonville, for appellants.

Oliver D. Kessell, Ripley, for appellee.

MILLER, Justice:

We consider today what notice is constitutionally required prior to the sheriff's sale of real property for delinquent taxes pursuant to W.Va.Code, 11A–3–1, *et seq.* (1967). Admittedly, the issue presented here is limited, since the statute was amended in 1983 and 1985 to provide for notice by certified mail to comply with *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).[1]

On July 12, 1978, the plaintiffs conveyed to Cecil J. Taylor, III, and Faye V. Taylor, his wife, a 23.681 acre tract of land situate in Jackson County. On the same day, the Taylors executed a deed of trust thereon to secure the payment of a promissory note in the principal sum of $12,000. Monthly installments on the note of $223.97 were to be remitted to the Bank of Sissonville. The deed of trust, as recorded, identified the plaintiffs as beneficiaries and Walton S. Shepherd, III, of Kanawha County as trustee.

For the year 1980, the tract was assessed and entered in the land books of Jackson County in the name of the Taylors. No real property taxes were paid by the Taylors in that year and the tract became delinquent. As required by W.Va.Code, 11A–2–13 (1967),[2] the county sheriff posted and published in the local newspaper a notice of the tax delinquency. A second notice, published pursuant to W.Va.Code, 11A–3–2 (1967),[3] announced that the tract would be offered for sale at public auction on October 19, 1981. There were no bids received at the auction, and the sheriff purchased the tract for the State.[4]

The tract was unredeemed, and on September 12, 1983, the deputy commissioner of forfeited and delinquent lands filed a

---

**1.** For a fuller discussion of these amendments, *see* note 3, *infra.*

**2.** W.Va.Code, 11A–2–13 (1967), provided, in pertinent part:

"A copy of each of the delinquent lists shall be posted at the front door of the courthouse of the county at least two weeks before the session of the county court at which they are to be presented for examination. At the same time a copy of each list shall be published as a Class I–0 legal advertisement in compliance with the provisions of article three [§ 59–3–1 et seq.], chapter fifty-nine of this Code, and the publication area for such publication shall be the county."

**3.** W.Va.Code, 11A–3–2 (1967), read, in part:

"On or before September tenth of each year, the sheriff shall prepare a second list of delinquent lands, which shall include all real estate in his county remaining delinquent as of September first, together with a notice of sale, in form or effect as follows:

"[Form omitted].

"The sheriff shall publish the list and notice prior to the sale date fixed in the notice as a class III–0 legal advertisement in compliance with the provisions of article three [§ 59–3–1, et seq.], chapter fifty-nine of this code, and the publication area for such publication shall be the county."

The statute was amended in 1983 to require that notice of tax delinquency be provided to the taxpayer by certified mail. 1983 W.Va. Acts ch. 183. A 1985 amendment broadened such notice to include "each person having a lien on real property upon which the taxes are due, as disclosed in a valid lien instrument duly recorded in the office of the clerk of the county commission." 1985 W.Va. Acts ch. 168.

**4.** W.Va.Code, 11A–3–6, provides: "If no person present bids the amount of taxes, interest and charges due on any real estate offered for sale, the sheriff shall purchase it on behalf of the State for the amount so due."

suit to authorize its sale for the benefit of the school fund.[5] The defendant, Gay H. Duke, purchased the tract for the sum of $50 at an auction held on December 9, 1983. A tax deed was executed and delivered to the defendant by the deputy commissioner on December 28, 1983.

This suit to set aside the tax deed was filed by the plaintiffs on August 2, 1984, in the Circuit Court of Jackson County in reliance on *Mennonite Bd. of Missions v. Adams, supra.* By order dated October 28, 1986, the court entered summary judgment for the defendant. *Mennonite* was found not to control because there were insufficient facts developed as to the notice of the sale by the deputy commissioner.

The issue that we confront today is whether a property owner or a mortgagee may be deprived of his property interest without adequate notice prior to the sale of property at a sheriff's sale for failure to pay taxes.[6]

We spoke to this issue in advance of *Mennonite* in *Don S. Co., Inc. v. Roach,* 168 W.Va. 605, 285 S.E.2d 491 (1981), and concluded that there was a due process right to notice prior to a sheriff's sale, as evidenced by this language in Syllabus Point 1:

"A landowner whose property is to be sold for delinquent taxes under Chapter 11A, article 3 of the West Virginia Code, as amended, is an interested party, by virtue of the statutory entitlement to redeem delinquent property contained in article 3, who must be afforded the protection of the due process guarantees contained in the West Virginia and United States Constitutions."

We did not define in *Roach* the type of notice constitutionally required. Almost two years after *Roach,* the United States Supreme Court decided *Mennonite,* a case that involved a due process challenge to Indiana's tax sale statute by a mortgagee.

Under Indiana's statutory procedure, notice of a tax sale was provided to all parties by publication and posting. The landowner was also provided notice by certified mail, but a mortgagee was provided no additional notice. When the property was sold, the purchaser received a certificate of sale. This certificate constituted a priority lien on the property. If the tract was not timely redeemed, a deed was prepared and delivered to the purchaser giving him fee simple title, free and clear of all liens and encumbrances.

The United States Supreme Court initially found that a mortgagee possessed a substantial property interest which was significantly affected by the sale. This was because a tax sale immediately provided to the purchaser a priority lien which took precedence over the mortgagee's lien. Furthermore, if the property was unredeemed by the landowner or other interested party, the mortgagee's interest was entirely extinguished.

The Court next proceeded to determine the sufficiency of notice by posting and publication. Relying principally on *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), it held that constructive notice to a mortgagee violated due process where the mortgagee could reasonably be identified from public records.

"When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane.*" 462 U.S. at 798, 103 S.Ct. at 2711, 77 L.Ed.2d at 187. (Footnote omitted).

---

5. Lands purchased by the State at a tax sale become irredeemable eighteen months from the date of purchase. W.Va.Code, 11A–3–8. Once the redemption period lapses, the lands are subject to sale by the deputy commissioner pursuant to W.Va.Code, 11A–4–1, *et seq.* The proceeds of the sale are remitted to the school fund.

6. For a comprehensive article dealing with the West Virginia law on forfeited and delinquent lands, *see* J. Fisher, *Forfeited and Delinquent Lands—The Unresolved Constitutional Issue,* 89 W.Va.L.Rev. 961 (1987).

At a minimum, *Mennonite* stated, due process requires "[n]otice by mail or other means as certain to ensure actual notice" to the interested party. 462 U.S. at 800, 103 S.Ct. at 2712, 77 L.Ed.2d at 188.[7] Since the notice provided to the mortgagee was constitutionally insufficient, the tax sale was deemed to be ineffective.

More recently, on authority of *Mullane* and *Mennonite*, the Supreme Court invalidated an Oklahoma probate statute that provided for constructive notice to certain estate creditors. *Tulsa Prof. Collection Serv. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). The Oklahoma statute barred all contract claims against an estate if they were not filed within two months of a published notice. The Court in *Pope* dealt with a rather modest property interest—a cause of action. Furthermore, the statute in question was termed a "nonclaim" statute in that it automatically barred claims not filed against the estate within the prescribed time.

The argument was made in *Pope* that a "nonclaim" statute was analogous to a statute of limitations. Under settled law a statute of limitations involves no state action and, therefore, is not subject to attack on due process grounds. *See Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). The Court rejected this argument by pointing to the ongoing nature of the state's involvement in the probate procedure, and concluded:

> "Where the legal proceedings themselves trigger the time bar, even if those proceedings do not necessarily resolve the claim on its merits, the time bar lacks the self-executing feature that *Short* indicated was necessary to remove any due process problem. Rather, in such circumstances, due process is directly implicated and actual notice generally is required." 485 U.S. at 487, 108 S.Ct. at

1346, 99 L.Ed.2d at 577. (Citations omitted).

■ Two conclusions may be drawn from *Mennonite* and *Pope*. First, as with the mortgagee in *Mennonite*, the beneficiary of a deed of trust enjoys a protectible interest in the property subject to the trust. We have recognized the substantial property interests involved in a deed of trust—the trustee holding legal title for the beneficiary and the grantor holding an equitable title. *Rollyson v. Bourn*, 85 W.Va. 15, 100 S.E. 682 (1919).

■ Second, these cases prescribe certain constitutional due process requirements for notice of a tax sale of real property. Where a party having an interest in the property can reasonably be identified from public records or otherwise, due process requires that such party be provided notice by mail or other means as certain to ensure actual notice, as set out in *Mennonite*:

> "Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." 462 U.S. at 800, 103 S.Ct. at 2712, 77 L.Ed.2d at 188. (Emphasis in original).

■ Thus, we conclude that W.Va.Code, 11A–3–2 (1967), was, prior to its amendments in 1983 and 1985, constitutionally invalid insofar as it permitted the sale of real property without personal notice to affected owners and others having an interest in the property.

■ In the present case, we believe the plaintiffs' name and address were reasonably ascertainable. While the address did not appear on the face of the deed of trust, a handwritten notation in the margin thereof did provide an address. Furthermore,

---

7. In note 4 of *Mennonite*, 462 U.S. at 798, 103 S.Ct. at 2711, 77 L.Ed.2d at 187, the Court after discussing the generality of the Mennonite's address contained in the mortgage, i.e., Wayne County, Ohio, stated: "We assume that the mortgagee's address could have been ascertained by reasonably diligent efforts.... We do not suggest, however, that a governmental body is required to undertake extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identity is not in the public record."

other identifying information was reasonably available. The deed of trust specifically named Walton S. Shepherd, III, a resident of Kanawha County, as trustee and notice could have been mailed to him in that capacity. The deed of trust also stated that note payments were to be remitted to the Bank of Sissonville, which was the collection agent for the plaintiffs. A simple inquiry at that bank presumably would have provided the necessary address.

■ Another issue presented is whether a suit challenging the sufficiency of notice in a sheriff's sale is barred unless filed before the property is sold by the deputy commissioner pursuant to W.Va.Code, 11A–4–1, *et seq.* We are aware that in *Pearson v. Dodd,* 159 W.Va. 254, 221 S.E.2d 171 (1975), *appeal dismissed,* 429 U.S. 396, 97 S.Ct. 581, 50 L.Ed.2d 574 (1977), this issue was considered. The conclusion we reached in *Pearson* was that once the eighteen-month redemption period expired, as provided for in W.Va.Code, 11A–3–8,[8] the owner had no property interest.[9] However, *Pearson* was decided without the benefit of *Mennonite* and *Pope.*

It would appear that *Mennonite* implicitly answered this question. Under the Indiana tax statute, as described in *Mennonite,* the initial delinquent tax sale is conducted by the county treasurer. The purchaser at the tax sale receives

"a certificate of sale which constitutes a lien against the real property ... [and] is superior to all other liens against the property.... The tax sale is followed by a 2–year redemption period.... If the property is not redeemed ... a deed for the property [is delivered] to the purchaser, § 6–1.1–25–4, who thereby acquires 'an estate in fee simple absolute, free and clear of all liens and encumbrances.' § 6–1.1–25–4(d).... The previous owner, lienholders and others who claim to have an interest in the property may no longer redeem the property." 462 U.S. at 793–94, 103 S.Ct. at 2708–09, 77 L.Ed.2d at 184.

In *Mennonite,* suit was not instituted until after the redemption period had expired and the deed to the property had been delivered to the purchaser. Despite the fact that Mennonite, as the mortgagee, had its property interest extinguished under the Indiana statute, the Supreme Court nevertheless found that the lack of personal notice was a due process violation that vitiated the sale.[10]

In three post-*Mennonite* cases challenging a state tax sale statute, suit was filed after the initial delinquent tax sale and after the redemption period had ended. In each instance, the court had no difficulty in applying *Mennonite* to the original notice deficiency and did not hold that the expira-

---

**8.** W.Va.Code, 11A–3–8, provides in pertinent part:

"The former owner of any real estate so purchased by the State, or any other person who was entitled to pay the taxes thereon, may redeem such real estate from the auditor at any time within eighteen months after the date of such purchase. Thereafter such real estate shall be irredeemable[.]"

**9.** Syllabus Point 9 of *Pearson* states:

"*W.Va.Code* 1931, 11A–3–8, as amended, gives a former owner of delinquent land whose interest is not otherwise saved and protected, a statutory entitlement, that is, a right to redeem the land which he formerly owned, at any time within eighteen months of the date of the State's purchase of the property. If redemption does not occur within such period, then this right no longer exists, because absolute title has vested in the State." Based on this holding in *Pearson,* and the concession in oral argument that no attack was

made as to the adequacy of notice prior to the sheriff's sale, the Supreme Court dismissed the appeal, 429 U.S. at 397, 97 S.Ct. at 582, 50 L.Ed.2d at 576. Thus, the Supreme Court left open the question of whether the lack of proper notice at the sheriff's sale would vitiate the State's acquisition of irredeemable title under W.Va.Code, 11A–3–8, and the subsequent commissioner's sale under W.Va.Code, 11A–4–8.

**10.** No argument is made that the redemption statute acts as a statute of limitations and, therefore, no state action is involved triggering due process considerations. Clearly, under *Pope,* our redemption statute, W.Va.Code, 11A–3–8, is only a step in the overall procedure which involves continued state action. The State has title during the redemption period and, after it ends, the State must through its agents, the auditor and the deputy commissioner of delinquent and forfeited lands, sell the property for the delinquent taxes and interest thereon. W.Va.Code, 11A–4–1, *et seq.*

tion of the redemption period operated as a bar to any subsequent suit. *McCann v. Scaduto,* 71 N.Y.2d 164, 524 N.Y.S.2d 398, 519 N.E.2d 309 (1987); *Seattle–First Nat'l Bank v. Umatilla County,* 77 Or.App. 283, 713 P.2d 33 (1986), *appeal denied,* 300 Or. 704, 716 P.2d 758 (1986); *In Re Upset Sale,* 505 Pa. 327, 479 A.2d 940 (1984).

There is, of course, a basic rationality to this result. If one's property has been wrongfully taken because of a constitutional due process violation, it is hardly an answer to say that such person cannot bring suit because he now lacks an interest in the property.

We, therefore, overrule the holding of Syllabus Point 9 of *Pearson* insofar as it precludes a landowner or other party having an interest in real property from bringing suit to set aside the sale of the property based on a constitutionally defective notice at the sheriff's sale for delinquent taxes.

For the foregoing reason, the judgment of the Circuit Court of Jackson County is reversed and this case is remanded for further proceedings not inconsistent with this opinion.[11]

REVERSED AND REMANDED.

---

**11.** Because the appellants are mortgagees, and the former landowners did not join as parties to the instant suit, it is unnecessary to set aside or cancel the tax deed. The due process rights of the plaintiffs are adequately protected by an order to reinstate their lien. *See First Pennsylvania Bank v. Lancaster County Tax Claim Bureau,* 104 Pa.Commw. 135, 521 A.2d 114 (1987).