408 S.E.2d 84

**Ruth GEIBEL, Plaintiff Below, Appellee,**

**v.**

**Charles A. CLARK and Juanita Clark, Defendants Below, Appellants.**

**No. 19743.**

Supreme Court of Appeals of West Virginia.

Submitted May 8, 1991.

Decided July 19, 1991.

Jeffrey W. Vangilder, Sr. Asst. Atty. Gen., Charleston, for amicus curiae Glen B. Gainer, Jr., State Auditor and Com'r. of Forfeited and Delinquent Lands of West Virginia.

Bernard T. Nibert, II, Huntington, for appellants.

Ray L. Hampton, II, Vital and Hampton, Barboursville, for appellee.

McHUGH, Justice:

This appeal presents the question of whether *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), which this Court followed in *Lilly v. Duke*, 180 W.Va. 228, 376 S.E.2d 122 (1988), on the type of notice constitutionally required, ordinarily, for a sheriff's tax sale of real property, should be applied retroactively to sheriffs' tax sales conducted before *Mennonite Board of Missions* was decided. We hold in the negative and reverse the contrary final order of the Circuit Court of Wayne County, West Virginia. We remand the case, however, for further proceedings on a related issue of adverse possession raised in the pleadings.

I

Green Wright and Ruby Wright, husband and wife, as joint tenants with the right of survivorship, owned certain real property in Wayne County, West Virginia (Lot No. 1, Zone 4, Circle 5, Miller Subdivision, Westmoreland District). In 1965, this property was sold for delinquent taxes and purchased by the sheriff on behalf of the State of West Virginia for nonpayment of *ad valorem* real property taxes, as no bids for the property were received at the public auction.[1] Pursuant to the requirements of the statute effective at that time, *W.Va. Code*, 11A-3-2 [1965], advance notice of the sheriff's tax sale was by newspaper publication and by posting at the front door of the courthouse. No notice of the sheriff's tax sale was mailed to the Wrights, as the statute at that time did not require the same.[2] The Wrights did not redeem the property during the ensuing eighteen months, and, pursuant to *W.Va.Code*, 11A-3-8 [1947], the property became irredeemable. In 1968, the State's agent, the deputy commissioner of forfeited and delinquent lands, brought suit and received permission from the Circuit Court of Wayne County to sell the property on behalf of the State for benefit of the school fund.[3] Pursuant to *W.Va.Code*, 11A-4-23 [1967], notice of the sale by the deputy commissioner of forfeited and delinquent lands was solely by newspaper publication. On January 20, 1969, the circuit court confirmed the sale, and on that date a deed to the property was executed and delivered by the deputy commissioner to the defendant-appellant,

1. *See W.Va.Code*, 11A-3-6 [1941].

2. Prior to this "second" notice, of the sheriff's tax sale, by newspaper publication and by posting at the front door of the courthouse under *W.Va.Code*, 11A-3-2 [1965], an earlier, "first" notice, of tax delinquency, by such publication and posting had been furnished pursuant to *W.Va.Code*, 11A-2-13 [1961] (the last amendment thereto was in 1983).

*W.Va.Code*, 11A-3-2 was amended in 1983 to require the sheriff to give advance notice of his or her sale of the real property for real property tax delinquency by sending a notice of such

delinquency by certified mail to the last known address of each person whose taxes are delinquent, in addition to notice by newspaper publication. Likewise, that statute was amended in 1985 to require notice by certified mail also to each person having a lien upon the real property, as disclosed by a valid lien instrument duly of record in the office of the clerk of the county commission.

3. *See W.Va. Const.* art. XIII, §§ 3-4 and *W.Va. Code*, 11A-4-1 to 11A-4-41, as amended.

Charles Clark, a practicing attorney at that time.[4]

The Wrights and their daughter, Ruth Geibel, the plaintiff-appellee, continued to occupy the property at all times after the 1965 tax sale to the sheriff. They paid no rent to the Clarks. The Wrights paid for city paving assessments against the lot and insured the property throughout the years after the State's sale to Mr. Clark in 1969. On the other hand, the defendants-appellants, the Clarks, have paid all real property taxes on the property after 1969 and also have insured the same since then.

Ms. Geibel's mother, Ruby Wright, died in 1981, and Ms. Geibel's father, Green Wright, died testate in 1987. Ms. Geibel is the executrix and sole beneficiary under Green Wright's will. Ms. Geibel claims that she first learned in March, 1988 of the sheriff's tax sale and of the State's sale of the property to Mr. Clark, while she was administering Green Wright's estate. In August, 1988, she filed this action in the Circuit Court of Wayne County ("the trial court") to establish title by adverse possession and, therefore, to set aside the deed to Mr. Clark as a cloud on her title.

Discovery in the action indicates that Green Wright visited Mr. Clark shortly after Mr. Clark acquired the property in 1969, but discovery also indicates that, apparently, no one still living is able to testify as to the content of the discussion during that visit.[5] The Clarks contend that they allowed Ms. Geibel's parents, the Wrights, to live on the property, apparently rent-free, for their lives only. Mr. Wright allegedly thought he did not have to pay real property taxes because of his age (72 years of age in 1965).

Ms. Geibel amended her complaint to add a claim that the sheriff's tax sale and the subsequent deed to Mr. Clark from the deputy commissioner were void because her parents, the Wrights, were not mailed notice of the impending sheriff's tax sale and of their right of redemption.

The Clarks' answer asserted ownership by virtue of the deed and asserted laches, that is, the Wrights and Ms. Geibel allegedly had delayed unreasonably their action to establish title to the real property, to the alleged prejudice of the Clarks.[6] In their amended answer the Clarks further asserted that the plaintiff's action was time-barred by the ten-year statute of limitations for entry upon or recovery of lands, *W.Va.Code*, 55-2-1 [1931].

The trial court subsequently granted the plaintiff's, Ms. Geibel's, motion for summary judgment. The trial court, relying upon *Lilly v. Duke*, 180 W.Va. 228, 376 S.E.2d 122 (1988), discussed below, ruled that the tax deed to the Clarks was void due to the lack of notice by mail of the sheriff's tax sale earlier. The trial court also ruled that the Clarks, and not the Wrights or Ms. Geibel, were the ones guilty of laches as a matter of law, by not taking any procedures to eject the Wrights and Ms. Geibel, the "former" owners of the property.

## II

This Court in syllabus points 1–2 of *Lilly v. Duke*, 180 W.Va. 228, 376 S.E.2d 122 (1988), adhering to the constitutional due process holding of *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), held:

1. There are certain constitutional due process requirements for notice of a tax sale of real property. Where a party

---

4. The other defendant-appellant, Mr. Clark's wife, Juanita Clark, has a dower interest in this property as a result of this deed.

5. Mr. Clark apparently is mentally "disabled" now. Ms. Geibel argues that the Dead Man's Statute, *W.Va.Code*, 57-3-1 [1937], precludes adverse testimony by the Clarks against her as executrix of her deceased father's estate, concerning any personal transaction or communication with her now-deceased father. *But see* syl. pt. 1, *Keyes v. Keyes*, 182 W.Va. 802, 392

S.E.2d 693 (1990) (trial court may, with parties' agreement, admit testimony, in a bench trial, from all witnesses whose testimony would be barred technically by Dead Man's Statute; trial court would determine credibility and weight of this evidence).

6. The "prejudice" claimed by the Clarks is apparently their payment of real property taxes on the subject property for about twenty years. They have not constructed any capital improvements on the property.

having an interest in the property can reasonably be identified from public records or otherwise, due process requires that such party be provided notice by mail or other means as certain to ensure actual notice.

2. W.Va.Code, 11A–3–2 (1967), was, prior to its amendments in 1983 and 1985, constitutionally invalid insofar as it permitted the sale of real property without personal notice to affected owners and others having an interest in the property.

Thus, *Mennonite Board of Missions* and *Lilly v. Duke* invalidated, ordinarily, mere constructive notice of a tax sale of real property to the state and, instead, required, as a matter of procedural due process, a reasonably diligent effort by the state's agents to provide actual notice, of such tax sale, to the landowner(s) and to other interested persons duly of record, such as lienholders.[7]

The sheriff's tax sale in *Lilly v. Duke* occurred in October, 1981; the tax deed from the deputy commissioner was delivered in December, 1983; and the action to set aside that tax deed was filed in August, 1984. In *Lilly v. Duke*, following the implicit conclusion of *Mennonite Board of Missions*, we concluded that the "former" owner of the land who had been deprived wrongfully of his or her title to the land by a sheriff's tax sale in violation of constitutional due process notice requirements may challenge the validity of the sheriff's tax sale despite the purported loss of his or her right to redeem after the eighteen-month redemption period. Our holding was stated in syllabus point 3 of *Lilly v. Duke:*

The holding of Syllabus Point 9 of *Pearson v. Dodd*, 159 W.Va. 254, 221 S.E.2d 171 (1975), *appeal dismissed*, 429

U.S. 396, 97 S.Ct. 581, 50 L.Ed.2d 574 (1977), is overruled insofar as it precludes a landowner or other party having an interest in real property from bringing suit to set aside the sale of the property based on a constitutionally defective notice at the sheriff's sale for delinquent taxes.

The opinion of this Court in *Lilly v. Duke* was, however, silent as to the retroactive effect in general, that is, whether *Mennonite Board of Missions'* new due process rule on notice, adhered to, of necessity, in *Lilly v. Duke*, would be applied to invalidate all sheriffs' tax sales conducted before the effective date of *Mennonite Board of Missions* (June 22, 1983) and which were conducted in accordance with the statute effective at the time of such sales.

In *Anderson v. Jackson*, 180 W.Va. 194, 375 S.E.2d 827 (1988) (per curiam), decided only three weeks after *Lilly v. Duke*, this Court applied *Mennonite Board of Missions* and *Lilly v. Duke* to invalidate a 1976 sheriff's tax sale with notice thereof only by publication and posting. The issue of whether *Mennonite Board of Missions* should be applied prospectively only was not, however, raised in *Anderson v. Jackson*. Instead, the focus of the opinion was on the issue of whether an action to set aside delinquent land tax deeds may be time barred. We held that it may, under the principles of laches, but held that laches was not shown in that case because the action to set aside the tax deed from the deputy commissioner was brought within eight months after the delivery of the tax deed, and the purchaser under the tax deed had not constructed any capital improvements on the property.[8]

---

7. In *Citizens National Bank v. Dunnaway*, 184 W.Va. 453, 400 S.E.2d 888 (1990) (per curiam), involving a sheriff's tax sale in November, 1983, under the 1983 version of *W.Va.Code*, 11A–3–2, *see supra* note 2, we held that a sheriff's tax sale was valid despite the lack of actual notice to a beneficiary of a deed of trust, because a reasonably diligent effort to provide actual notice would not have disclosed the property interest of such beneficiary, for the clerk of the county commission had indexed the deed of trust improperly.

The issue of whether *Mennonite Board of Missions* should be applied retroactively to sheriffs' tax sales conducted prior to that decision was not presented in *Dunnaway* because the sheriff's tax sale there occurred in November, 1983, *after Mennonite Board of Missions* was decided (on June 22, 1983).

8. The failure of the appellants to raise explicitly the retroactivity/prospectivity issue before the trial court was understandable in light of our approach in *Anderson v. Jackson,* cited to the

The test for determining whether to give full retroactivity to an opinion of this Court overruling prior precedent(s), or announcing any new rule which was not clearly foreshadowed,[9] is set forth in syllabus point 5 of *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979):

> In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a *traditionally settled area of law, such as* contracts or *property* as distinguished from torts, and the new rule was not clearly foreshadowed, then *retroactivity is less justified.* Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from *statutory or constitutional interpretations* that represent a clear departure from prior precedent, *prospective application will ordinarily be favored.* Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.

(emphasis added) *Accord, Belcher v. Goins*, 184 W.Va. 395, 407 n. 10, 400 S.E.2d 830, 842 n. 10 (1990). *See also* syl. pt. 4, *King v. Kayak Manufacturing Corp.*, 182 W.Va. 276, 387 S.E.2d 511 (1989) (condensed statement of same six factors).

The first factor, the nature of the substantive issue, is very important here. When interests in property are involved, courts usually give only prospective effect to a new court-made rule because property law is a traditionally settled area of the law, requiring, for example, finality of transactions to promote the marketability of real estate titles. As the Court stated, with respect to property law, in *Hock v. City of Morgantown*, 162 W.Va. 853, 856, 253 S.E.2d 386, 388 (1979), "certainty above all else is the preeminent compelling public policy to be served." [10]

With respect to the second factor, procedural law is involved, specifically, the type of notice required, a factor favoring retroactivity. However, substantive law is also involved, namely, the validity of real estate titles, a factor strongly favoring prospectivity.

With respect to the third and fourth retroactivity/prospectivity factors, constitutional interpretation of long-standing statutory law affecting a relatively large number of persons, rather than common law, is involved, a factor generally favoring prospectivity, according to *Bradley.* In this regard, we are aware of the principle that "[g]enerally, when a statute or ordinance is declared unconstitutional, it is inoperative, as if it had never been passed." Syl. pt. 6, *City of Fairmont v. Pitrolo Pontiac–Cad-*

---

trial court in support of the appellee's motion for summary judgment. The appellants argued to the trial court that factual issues precluded summary judgment and that *Anderson v. Jackson* was distinguishable because the Wrights had actual notice of the sheriff's tax sale shortly thereafter, within the eighteen-month redemption period.

**9.** *See, e.g.,* syl. pt. 14, *LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983), and 172 W.Va. at 171, 304 S.E.2d at 324–25 (except for other cases then on appeal where point in question was preserved at trial, prospective application

only was to be given to particular new rule affecting property interests in divorce cases).

**10.** In *LaRue v. LaRue,* 172 W.Va. 158, 304 S.E.2d 312 (1983), this Court noted:

> At the heart of any retroactivity issue is the attempt to draw some just balance line between two competing issues: the reliance by the parties on the prior law with its settled expectations, as against the need to bring new principles to bear on the changing conditions of society in pending cases.

*Id.* 172 at 170–171 n. 20, 304 S.E.2d at 324 n. 20.

*illac Co.*, 172 W.Va. 505, 308 S.E.2d 527 (1983), *cert. denied*, 466 U.S. 958, 104 S.Ct. 2169, 80 L.Ed.2d 553 (1984). That case also recognized, however, " 'that such broad statements as to the effect of the determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored.' " 172 W.Va. at 512, 308 S.E.2d at 534 (internal citation omitted). *Accord, Williamson v. Gane*, 176 W.Va. 443, 445 n. 4, 345 S.E.2d 318, 320 n. 4 (1986).

Fifth, the radical departure from existing law, not clearly foreshadowed, favors prospectivity. As the three dissenters in *Mennonite Board of Missions* stressed, prior opinions of the Supreme Court of the United States had authorized flexibility with respect to the type of notice which was "reasonable" for various proceedings, rather than establishing the mailing of notice or other means of attempting to provide actual notice as a minimum standard in most cases.

Finally, almost all of the few precedents in other jurisdictions expressly addressing the general retroactive/prospective effect of *Mennonite Board of Missions* and its progeny have held that the constitutional due process holdings of those controlling cases of the Supreme Court of the United States are to be applied prospectively only. *E.g., McCann v. Scaduto*, 71 N.Y.2d 164, 178, 519 N.E.2d 309, 315, 524 N.Y.S.2d 398, 404–05 (1987); *Hanesworth v. Johnke*, 783 P.2d 173, 176–77 (Wyo.1989). We agree with the New York court of last resort in *McCann*, which found *Mennonite Board of Missions* to be controlling: "Recognizing that our declaration could have [a] broad, unsettling effect on the marketability of otherwise settled titles to property, we conclude that our decision in th[is] case[ ] is to have no general retroactive application [.]" 71 N.Y.2d at 178, 519 N.E.2d at 315, 524 N.Y.S.2d at 404–05.[11]

Thousands of sheriffs' tax sales of real property with only constructive notice thereof occurred in this state under *W.Va. Code*, 11A–3–2 between 1941 and 1983. The retroactive application of *Mennonite Board of Missions* to invalidate all of these sheriffs' tax sales would create extreme uncertainties in thousands of land titles in this state containing a tax deed in the chain of title during that period of time.

Accordingly, this Court holds that *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the constitutional due process teachings of which this Court followed in *Lilly v. Duke*, 180 W.Va. 228, 376 S.E.2d 122 (1988), is not to be applied with general retroactive effect to invalidate virtually all sheriffs' tax sales of real property, with mere constructive notice, which were conducted before *Mennonite Board of Missions* was decided on June 22, 1983. General retroactive application of *Mennonite Board of Missions* would have severely disruptive effects on land titles in this state.

■ In the present case the sheriff's tax sale occurred eighteen years prior to the decision in *Mennonite Board of Missions* and was conducted in accordance with the then effective statute. Consistent with the foregoing, we disagree with the trial court's ruling that the sheriff's tax sale and the subsequent tax deed to Mr. Clark were void.

### III

The trial granted Ms. Geibel's motion for summary judgment. *See W.Va.R.Civ.P.* 56(c). In addition to holding that the sheriff's tax sale and the subsequent tax deed to Mr. Clark from the deputy commissioner were void, the trial court held that the *Clarks were* guilty of laches *as a matter of law* by not taking any procedures to eject the Wrights or Ms. Geibel from the property. Finally, the trial court held, on the other hand, that the *Wrights* and Ms.

---

**11.** *Fields v. Evans*, 484 N.E.2d 36, 38, 39 (Ind.Ct. App.1985), *opinion on reh'g*, on the other hand, applied *Mennonite Board of Missions* retroactively but without *any* discussion of the general retroactivity/prospectivity issue.

Geibel, *as a matter of law,* were *not* guilty of laches.

■ The well settled principle applicable to this case was set forth in syllabus point 3 of *Aetna Casualty & Surety Co. v. Federal Insurance Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963): "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Here, there are genuine issues of material fact raised by the discovery in the case: did the Wrights know in 1969 that Mr. Clark had acquired the property? did the Clarks have an agreement with the Wrights permitting them to remain in possession of the property? These and related factual questions dovetail with the adverse possession claim of Ms. Geibel, which needs to be developed.[12]

Consequently the trial court improperly granted summary judgment on the laches/adverse possession issue.

### IV

In summary, we reverse the trial court's ruling that the sheriff's tax sale of the subject real property and the subsequent tax deed from the deputy commissioner to Mr. Clark were void, for the reasons stated in section II of this opinion. In addition, we vacate the trial court's summary judgment on the laches/adverse possession issue, for the reasons stated in section III of this opinion, and remand the case for factual development of the adverse possession claim.

Reversed and remanded.

12. The trial court did not address the Clarks' assertion that Ms. Geibel's action was time barred by *W.Va.Code,* 55–2–1 [1931]. We need not address that issue because of our holding that the tax deed to Mr. Clark was valid. In view of that holding the trial court's focus on remand should be on whether Ms. Geibel can establish title to the property in question by adverse possession, as alleged in her amended complaint.