806 S.E.2d 154

**ANCIENT ENERGY, LTD., David E. Bowyer, and David A. Dickey, Petitioners**

v.

**Philip G. FERGUSON and John M. Cutright, Respondents**

No. 16-0373

Supreme Court of Appeals of West Virginia.

Submitted: September 13, 2017

Filed: October 10, 2017

Terri L. Tichenor, Esq., Tichenor Law Office, Fairmont, West Virginia, Attorney for Petitioners

Stephen C. Sluss, Esq., Hurricane, West Virginia, and Jeffrey R. Blair, Esq., Blair Law Firm, PLLC, Hurricane, West Virginia, Attorneys for Respondents

LOUGHRY, Chief Justice:

Ancient Energy, Ltd., David E. Bowyer, and David A. Dickey (hereinafter collectively "petitioners") appeal the February 29, 2016, final order of the Circuit Court of Barbour County granting summary judgment to Philip G. Ferguson, in his official capacity as Sheriff and Treasurer of Barbour County, and John M. Cutright, in his official capacity as Assessor of Barbour County (hereinafter collectively "respondents"). The petitioners purchased a tax lien on certain mineral interests from the Deputy Commissioner of Delinquent and Nonentered Lands of Barbour County on September 19, 2011, and secured a deed to the property on January 23, 2012. In this appeal, the petitioners contend that the circuit court erred by finding them liable for payment of the property taxes for the years of 2011 and 2012. Upon consideration of the parties' briefs and arguments and the pertinent authorities, we find no error and affirm the circuit court's order.

## I. Factual and Procedural Background

In November 2006, Sheriff Ferguson held a public auction of properties that were delinquent because of unpaid property taxes,[1] which included certain mineral interests described as "959.69 coal unmineable, in Union District, Barbour County, West Virginia."

---

1. *See* W.Va. Code § 11A-3-5 (2017) (requiring sheriff to sell unredeemed delinquent properties at public auction on designated date).

Because no bid was received for these mineral interests, Sheriff Ferguson certified a lien on the property to the West Virginia State Auditor's office pursuant to West Virginia Code § 11A-3-8 (2017).[2] The State Auditor is designated by statute as the "commissioner of delinquent and nonentered lands" and is tasked with selling those properties that sheriffs are unable to sell to recover delinquent taxes. *See* W.Va. Code § § 11A-3-33 and 11A-3-42 (2017). To accomplish this task, the State Auditor appoints a "deputy commissioner of delinquent and nonentered lands for each county"[3] who holds a second auction of certified properties if no party steps forward to redeem within eighteen months of the sheriff's certification.[4]

On September 19, 2011, Ancient Energy, a West Virginia corporation in the business of oil and gas development, purchased the tax lien on the subject property from G. Russell Rollyson, Jr., Deputy Commissioner of Delinquent and Nonentered Lands of Barbour County. The lien on the mineral interests was sold to Ancient Energy for its bid amount of one hundred dollars[5] for the delinquent taxes for the years of 2005 through 2010. After the required statutory notices were given and the redemption period expired, Ancient Energy requested that the deputy commissioner prepare a deed transferring ownership of the mineral interests[6] to petitioners David A. Dickey[7] and David E. Bowyer. The deed was executed as requested and recorded in the Barbour County Clerk's Office on March 8, 2012.

In June 2012, Assessor Cutright entered the property on the county land books in the names of Dickey and Bowyer. Thereafter, Dickey and Bowyer received and paid a tax invoice for the 2013 property taxes on or about August 19, 2013. Approximately two months later, the Sheriff's office returned Dickey and Bowyer's tender of payment for the 2013 taxes with a note explaining that the taxes for the years of 2011 and 2012 remained unpaid.[8] At the same time, Dickey and Bowyer received separate invoices for the 2011 and 2012 taxes in the amounts of $2,254.08 and $2,243.70, respectively.

The petitioners disputed their liability for the 2011 and 2012 taxes, arguing that because the mineral interests had been "sold" to the State, no taxes were due for that time period. Unable to resolve the matter with the respondents, the petitioners filed a petition for a writ of mandamus in the circuit court on September 23, 2014, seeking an order requiring the respondents to "remove the back tax assessments and accept payment from the Petitioners for the 2013 invoice as requested." The respondents filed an answer and a motion for judgment on the pleadings pursuant to Rule 12(c) of the West Virginia Rules of Civil Procedure. The circuit court heard arguments on the motion on January 9, 2016, and then continued the matter to allow the parties time to examine the land books to determine when the 2011 and 2012 tax assessments occurred.[9] To clarify the issue, the parties agreed to submit an affidavit, which the court would accept as fact and stipulation. Thereafter, the respondents sub-

---

**2.** The language of this statute is set forth in the discussion section herein.

**3.** *See* W.Va. Code § 11A-3-34 (2017).

**4.** *See* W.Va. Code § 11A-3-45 (2017) (requiring deputy commissioner to sell certified properties at auction to highest bidder).

**5.** Unlike the sheriff who cannot sell the property for less than the amount of taxes, fees, and interest due, the deputy commissioner sells the property to the highest bidder. *See* W.Va. Code §§ 11A-3-5 and 11A-3-45.

**6.** *See* W.Va. Code §§ 11A-3-52 (2017) (setting forth steps required of purchaser to secure a deed) and 11A-3-54 (2017) (setting forth notice to redeem form).

**7.** The record indicates that David A. Dickey is the President of Ancient Energy.

**8.** West Virginia Code § 11A-1-7 (2017) precludes the sheriff from accepting payment for the current year taxes if the preceding year is delinquent.

**9.** During the hearing, the petitioners asserted that the 2011 and 2012 assessments were not made until after they submitted payment for the 2013 taxes. However, the respondents maintained that the 2011, 2012, and 2013 assessments were made at the same time but a clerical error had resulted in the petitioners only initially receiving the 2013 tax invoice.

mitted an affidavit from Assessor Cutright stating that "[t]he Assessments for Tax Years 2011 and 2012 were entered on the Barbour County, West Virginia, Land Records ... and were available for review by the taxpayers while the books were before the Barbour County Commission Sitting as Board of Equalization and Review in February of 2013." Upon consideration of the affidavit, the circuit court converted the respondents' Rule 12(c) motion to a motion for summary judgment[10] and entered the final order in favor of the respondents. The circuit court concluded that "the Petitioners' title to the property relates back to July 1, 2004, which is the first day of July of the year in which the taxes, for nonpayment of which the real estate was sold, were assessed and therefore the back tax for 2011 and 2012 to Dickey and Bowyer were appropriate." This appeal followed.

## II. Standard of Review

Although the petitioners sought a writ of mandamus, the circuit court disposed of the matter by granting summary judgment to respondents, effectively denying the requested writ. The circuit court rendered its decision based upon the statutes that govern tax sales of delinquent properties. Our review of a circuit court's decision denying a writ of mandamus or granting summary judgment is *de novo. See* Syl. Pt. 1, *Harrison Cnty. Comm'n v. Harrison Cnty. Assessor,* 222 W.Va. 25, 658 S.E.2d 555 (2008) ("A *de novo* standard of review applies to a circuit court's decision to grant or deny a writ of mandamus."); Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo.*"). Likewise, when the issue on appeal involves a question of law or statutory interpretation, our review is *de novo. See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

## III. Discussion

Resolution of this matter lies within the legislatively-prescribed procedure that regulates the sales of tax liens and allows those who purchase tax liens to secure deeds to the properties. When considering any statutory provision, we abide by our well-established rules of statutory construction. "As a rule, when both a specific and a general statute apply to a given case, the *specific* statute governs." *In re Chevie V.,* 226 W.Va. 363, 371, 700 S.E.2d 815, 823 (2010). In determining how a specific statute should be applied, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia,* 195 W.Va. 573, 587, 466 S.E.2d 424, 438 (1995). In other words, "[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation." Syl. Pt. 2, *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970); *see also* Syl. Pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). Therefore, "[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning." *Sizemore v. State Farm Gen. Ins. Co.,* 202 W.Va. 591, 596, 505 S.E.2d 654, 659 (1998) (internal quotations and citation omitted). With these fundamental precepts in mind, we consider whether the circuit court erred by granting summary judgment to the respondents.

The petitioners primarily contend that they are not liable for the 2011 and 2012 property taxes because they were not owners

---

**10.** Rule 12(c) of the West Virginia Rules of Civil Procedure provides that "[i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]"

in possession of the property during those years. They maintain that no taxes can be collected because the property was held by the State at that time. In support of their argument, petitioners cite West Virginia Code § 11-4-13 (2013) which provides, in pertinent part:

Real estate purchased for the State at a sale for taxes shall not be omitted from the land books but the officer whose duty it is to make out the same, shall duly enter, classify and value annually such real estate, as though no such sale had occurred, until such real estate is redeemed or otherwise disposed of by the State, but no taxes shall be extended thereon while the same remains the property of the State[.]

Conversely, the respondents assert that West Virginia Code § 11-4-13 does not apply in this instance because the property was never purchased by the State. Noting that the Legislature made extensive and substantial changes to the specific statutory provisions that govern the sale of property for delinquent taxes in 1994, the respondents maintain that property not sold at the Sheriff's sale is "certified" to the Auditor but remains in the name of the owner who failed to pay the taxes. Relying upon West Virginia Code § 11A-3-62 (2017), which provides that the tax lien purchaser obtains title to the property that relates back to the year of the assessment for the taxes that became delinquent, the respondents reason that the petitioners are liable for the 2011 and 2012 taxes because their deed specifies that they acquired title in 2004. We agree.

We previously recognized in *Mingo County Redevelopment Authority v. Green*, 207 W.Va. 486, 491, 534 S.E.2d 40, 45 (2000), that "this area of the law has undergone significant change in the last several years, with each change increasing the protections afforded the delinquent land owner." The revision occurred after this Court recognized in *Lilly v. Duke*, 180 W.Va. 228, 231, 376 S.E.2d 122, 125 (1988) that the decisions of the United States Supreme Court in *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) and *Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988), "prescribed certain constitutional due process requirements for notice of a tax sale of real property." Accordingly, this Court held in *Lilly*:

There are certain constitutional due process requirements for notice of a tax sale of real property. Where a party having an interest in the property can reasonably be identified from public records or otherwise, due process requires that such party be provided notice by mail or other means as certain to ensure actual notice.

180 W.Va. at 228, 376 S.E.2d at 122, syl. pt. 1. In order to satisfy *Lilly* and the United States Supreme Court precedent triggering that decision, the Legislature amended and reenacted the statutes concerning the sale of land for taxes, now codified at West Virginia Code §§ 11A-3-1 to 11A-3-69. *Green*, 207 W.Va. at 492, 534 S.E.2d at 46.

Of particular relevance to this case is our discussion in *Green* regarding the duties of a sheriff when he or she is unable to sell delinquent property at auction to recover the outstanding taxes. West Virginia Code § 11A-3-8(a), as enacted in 1994, provides:

If no person present bids the amount of taxes, interest and charges due on any real estate offered for sale, the sheriff shall *certify the real estate to the Auditor for disposition* pursuant to section forty-four [§ 11A-3-44] of this article, subject, however, to the right of redemption provided by section thirty-eight [§ 11A-3-38] of this article. The Auditor shall prescribe the form by which the sheriff certifies the property.

(Emphasis added). Addressing this statutory provision in *Green*, we explained:

If a sheriff is unable to sell the property at auction to recover the delinquent taxes, the sheriff "certifies" the property to the office of the Auditor. In plain language, this means that the sheriff conveys all of the pertinent information regarding the property to the Auditor so that the Auditor may attempt a second auction sale pursuant to statute. W. Va. Code §§ 11A-3-8, 11A-3-44, *et seq.* Before the Legislature revised the statute, the Auditor "took title" to the property, thus terminating the rights of the delinquent owner.

*Green*, 207 W.Va. at 489 n.9, 534 S.E.2d at 43 n.9. Explaining further, this Court stated:

Prior to the changes made by the Legislature in 1994 the State actually "purchased" the property if not sold at the tax sale, and title to the land passed to the State, essentially stripping the former owner of his or her interest at that point in the process. Because of the due process problems inherent in such a scheme, now a sheriff is said to "certify" the property to the Auditor, but title still rests with the (soon-to-be-former) owner until the deputy land commissioner conveys a deed at the end of the tax-sale process. W. Va. Code § 11A-3-8 (1994).

*Id.* at 494 n.24, 534 S.E.2d at 48 n.24.

■ As we noted at the outset,

" ' "The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled." Syllabus Point 1, *UMWA by Trumka v. Kingdon*, 174 W.Va. 330, 325 S.E.2d 120 (1984).' Syllabus point 1, *Whitlow v. Board of Education of Kanawha County*, 190 W.Va. 223, 438 S.E.2d 15 (1993)." Syllabus point 6, *Albright v. White*, 202 W.Va. 292, 503 S.E.2d 860 (1998).

Syl. Pt. 6, *Carvey v. West Virginia State Bd. of Educ.*, 206 W.Va. 720, 527 S.E.2d 831 (1999). West Virginia Code § 11-4-13, which has not been amended since 1939, is a general statute addressing the assessment of land purchased by the State. The statute has no application in this instance because title to property certified to the Auditor no longer passes to the State under West Virginia Code § 11A-3-8, the specific statutory provision that instructs sheriffs regarding unsold property. Pursuant to West Virginia Code § 11A-3-8, the sheriff is required to "certify" the unsold property to the Auditor but title remains with the owner, who still has the opportunity to redeem the property. *See* W.Va. Code § 11A-3-38 (2017) (allowing owner of real estate certified to Auditor to redeem prior to certification of such real estate to deputy commissioner).

Title to delinquent property that has been certified to the Auditor remains with the owner until the tax lien is purchased from the Auditor's deputy commissioner of delinquent and nonentered lands and the tax lien purchaser has completed all the steps necessary to secure a deed to the property.[11] At that juncture, West Virginia Code § 11A-3-59 (2017) allows the tax lien purchaser to request that the deputy commissioner make and deliver a deed to the property. Critically, West Virginia Code § 11A-3-62(a), provides, in relevant part:

Whenever the purchaser of any tax lien on any real estate sold at a tax sale, his heirs or assigns, shall have obtained a deed for such real estate from the deputy commissioner or from a commissioner appointed to make the deed, he or they shall thereby acquire all such right, title and interest, in and to the real estate, as was, at the time of the execution and delivery of the deed, vested in or held by any person who was entitled to redeem, unless such person is one who, being required by law to have his interest separately assessed and taxed, has done so and has paid all the taxes due thereon, or unless the rights of such person are expressly saved by the provisions of section forty-nine [§ 11A-3-49] of this article or section two [§ 11A-4-2], three [§ 11A-4-3], four [§ 11A-4-4] or six [§ 11A-4-6], article four of this chapter.

The tax deed shall be conclusive evidence of the acquisition of such title. *If the property was sold for nonpayment of taxes, the title so acquired shall relate back to the first day of July of the year in which the taxes, for nonpayment of which the real estate was sold, were assessed.*

(Emphasis added).

The record in this case shows that after Assessor Cutright was informed that petitioners Dickey and Bowyer had acquired title to the subject property, he entered assessments for the 2011, 2012, and 2013 tax years. According to Assessor Cutright, "[t]he said land books were certified and true and accurate by the said Barbour County Commission Sitting as Board of Equalization and Review in February of 2013." Because West Virginia

11. *See* West Virginia Code § 11A-3-52.

Code § 11A-3-62 relates the tax lien purchaser's title back to the year of the assessment for the property taxes that became delinquent, we find no error in the circuit court's determination that the petitioners were liable for the 2011 and 2012 property taxes. As such, the circuit court's grant of summary judgment to the respondents was proper.[12] *See* Syl. Pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York*, 148 W.Va. 160, 133 S.E.2d 770 (1963) ("A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law.").

## IV. Conclusion

Accordingly, for the reasons set forth above, the final order of the Circuit Court of Barbour County entered on February 29, 2016, is affirmed.

Affirmed.

---

**12.** The petitioners also asserted that a genuine issue of material fact existed regarding when the 2011 and 2012 tax assessments on the property were made which should have precluded summary judgment. We find no merit to this argument because this issue was resolved below, with petitioners' consent, by Assessor Cutright's affidavit. The petitioners also argued that the property should have been classified as "nonentered land," *i.e.*, property not on the land books for taxation, in which case title would have only related back to the date of sale. *See* W.Va. Code § 11A-3-62 ("If the property was sold for nonentry ... the title shall relate back to the date of sale."). We also find this argument unavailing because the property was sold for nonpayment of taxes and, therefore, was properly classified as "delinquent" with no taxes extended until the tax lien was purchased.